633 F.Supp. 78 (1985)
MISSISSIPPI MEDICAID COMMISSION, State of Mississippi, Plaintiff,
v.
UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; Margaret M. Heckler, Secretary, United States Department of Health and Human Services; Carolyn K. Davis, Administrator, Health Care Financing Administration; George Holland, Regional Administrator, Health Care Financing Administration; Clarence Broome, Assistant Regional Administrator, Health Care Financing Administration; and Jack Wilson, Financial Analyst, Health Care Financing Administration, Defendants.
Civ. A. No. J84-0200(L).
United States District Court, S.D. Mississippi, Jackson Division.
June 27, 1985.
*79 William R. Phillips, Jackson, Miss., Thomas E. Childs, Jr., Fulton, Miss., for plaintiff.
L.A. Smith, III, Asst. U.S. Atty., Jackson, Miss., Steven J. Edelstein, Asst. Reg. Atty., Dept. of Health and Human Services, Atlanta, Ga., for defendants.

MEMORANDUM OPINION
TOM S. LEE, District Judge.
This cause is before the court on the motion of the plaintiff, Mississippi Medicaid Commission, State of Mississippi, for summary judgment and the cross-motion of the defendants for summary judgment pursuant to Rule 56 of the Federal Rules of Civil *80 Procedure. After consideration of the briefs with attachments submitted by the parties, the court is of the opinion that the defendants' motion for summary judgment should be granted and that the plaintiff's motion for summary judgment should be denied.
The Mississippi Medicaid Commission (MMC) brought this action for judicial review of a final decision of the Secretary of Health and Human Services (HHS) disallowing $156,990.00 in federal financial participation to the MMC for the costs of services rendered to the patients of Hotel Reed Nursing Center (Hotel Reed) for the period June 1, 1982 through September 27, 1982. The Secretary, exercising her "look behind" authority pursuant to 42 CFR § 442.30 (1984), concluded that the provider agreement issued to Hotel Reed by the MMC on July 2, 1982, effective June 1, 1982, was improperly issued since the findings of the state survey agency, the Mississippi Health Care Commission (MHCC), showed the existence of nine of eighteen condition-level deficiencies at Hotel Reed as of the survey dates of May 11-12, 1982. The Departmental Grant Appeals Board (Appeals Board) held on January 31, 1984 that:
(1) the state survey agency could not validly certify the nursing facility with one or more conditions out of compliance;
(2) the oral testimony of various state officials and the owner and employees of the facility to the effect that the health and safety of the patients was never in jeopardy was irrelevant since the written findings of the MHCC as required by 42 CFR § 442.105(a)(1984) demonstrated the contrary;
(3) the state failed to show that the conditions were met as of June 1, 1982, the date that the new provider agreement entitling the facility to federal funds would otherwise have been approved by the Health Care Financing Agency (HCFA), a branch of the HHS;
(4) the MMC had good cause to decline to enter into a provider agreement with Hotel Reed;
(5) the HCFA properly exercised its "look behind" authority; and
(6) the MMC's action in entering into the provider agreement was not justified by extenuating circumstances.

THE STRUCTURE OF THE MEDICAID PROGRAM
The Medicaid program is a joint federal-state program designed to provide medical assistance to certain categories of individuals under Title XIX of the Social Security Act, 42 U.S.C. § 1396, et seq. Under Title XIX, states wishing to participate in the Medicaid program must submit a state plan for medical assistance to be approved by the Secretary of Health and Human Services. 42 CFR § 442.10(1984). The Medicaid program provides funds to individuals both in skilled nursing facilities (SNF) and intermediate care facilities (ICF) if the facilities are certified as eligible for participation by the state survey agency. 42 CFR § 442.100(1984). In Mississippi, the state survey agency is the MHCC. If the state survey agency determines that the facility is in compliance with the federal requirements of the Medicaid program, it certifies the facility's eligibility to the MMC, the plaintiff herein, the agency which administers the Medicaid program in Mississippi. If this agency determines that the certification is proper, it executes a provider agreement with the facility, entitling the facility to receive state and federal matching funds. The HCFA administers the Medicaid program for the HHS. Under its so called "look behind" authority, 42 CFR § 442.30(1984), the HCFA may declare a provider agreement to be invalid if the state survey agency should fail to follow the rules and procedures for certification set forth by the Secretary.

HISTORY
Hotel Reed, located in Bay St. Louis, Mississippi, was formerly the Gulf View Haven Nursing Center (Gulf View). Because of a number of problems with the conditions at Gulf View, B.F. Simmons, Director *81 of MMC, and Mendal Kemp, Director of the Division of Licensure and Certification of the MHCC, jointly determined to decertify and delicense Gulf View in late 1981. During the course of these proceedings, the owner of Gulf View filed a Chapter 11 bankruptcy petition. The bankruptcy judge, Honorable Glover T. Roberts, expressing concern for the health and safety of the patients, barred the owner and his family from entering Gulf View and directed both the MHCC and the MMC not to terminate Gulf View. An oversight committee, also appointed by Judge Roberts, recommended Conner Cain to serve as interim manager of Gulf View due to his extensive experience in the nursing home business. Accordingly, Cain was appointed by Judge Roberts on February 2, 1982 and promptly began making substantial improvements. On February 16, 1982, Gulf View was sold to Conner Cain, the highest bidder. On February 26, 1982, the MHCC provisionally certified the nursing facility for the period March 1, 1982 through June 1, 1982.
Cain was immediately faced with a number of substantial problems. As previously stated, the deplorable conditions at Gulf View continued to exist in large part even though Cain, as interim manager, had made a number of improvements. For example, when the former owner had left Gulf View, he had taken all of the written documents and had established such an unfavorable reputation for the facility that food suppliers refused to make delivery unless they were paid in cash. Further, as testified by Kemp before the Appeals Board, Cain discovered that some of the employees hired by the former owner were operating a drug ring within the nursing home. The law enforcement authorities were notified and the employees were eventually caught in the act of receiving and dispensing the drugs. This solved one problem but aggravated the employee shortage problem. Also, as a result of the bankruptcy proceedings, Gulf View was without credit and had suffered a walkout by some of the remaining staff. Cain used his personal funds to make minor improvements but was unable to make any substantial improvements until April 26, 1982, when the facility was granted a state license and certificate of need by the MHCC. The patients at Gulf View could not be transferred to another facility because of a moratorium on the construction of new nursing homes in Mississippi, resulting in overcrowding in the existing facilities, and because the majority of the patients at Gulf View had no family and came there out of necessity.
Although only a few months had elapsed since Cain acquired ownership of Hotel Reed, the MHCC, in order to determine whether the facility could be recertified beginning June 1, 1982, conducted an onsite survey. As Kemp subsequently wrote in a letter to Frank Edwards of the MMC on September 30, 1982, the survey conducted in May "was too early to expect compliance with Minimum Standards." (emphasis original). The MHCC survey team, in fact, found that there were nine of a possible eighteen condition level deficiencies.[1] Nevertheless, the MHCC certified the facility on May 31, 1982, based on its finding that Hotel Reed was in compliance because it had submitted an acceptable plan of correction. Simmons of the MMC then conducted two personal on-site inspections on June 12 and June 17 to determine whether he had good cause to refuse to sign the provider agreement with Hotel Reed. Concluding that good cause did not exist, the MMC issued the provider agreement on July 2, 1982, effective June 1, 1982.[2] The *82 HCFA subsequently determined that Hotel Reed had not been properly certified between June 1 and September 27, 1982 and that the MMC was not entitled to federal matching funds to support the facility during that period. On September 26-27, 1982, the MHCC resurveyed Hotel Reed and found it to be in full compliance with all of the federal requirements. Subsequently, the HCFA conducted its own onsite survey and concluded that the MHCC's survey results were correct.

ISSUES
The issues raised by the parties are: (1) whether a state survey agency can validly certify nursing home facilities when condition level deficiencies exist and a plan of correction is deemed acceptable by the state survey agency; (2) whether or not Hotel Reed was in fact in compliance with the federal requirements at the time of the survey on May 11-12, 1982 or by June 1, 1982; (3) whether the defendant erred in failing to choose a statutorily-recognized alternative to decertification; and (4) whether the HCFA properly exercised its "look behind" authority.

SCOPE OF REVIEW
The scope of review on an appeal of an administrative decision to a federal district court is governed by the Administrative Procedure Act, 5 U.S.C.A. § 706(2)(A), (E) (1977). These subsections provide that review of the Secretary's decision is limited to determining whether the agency action was arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence or otherwise not in accordance with law. The regulations promulgated by the Secretary detailing the procedures by which providers are to be reimbursed should be followed so long as they are "reasonably related to the purposes of the enabling legislation." Further, the Secretary's interpretation of its regulations is entitled to "considerable deference". Sun Towers, Inc. v. Heckler, 725 F.2d 315, 325 (5th Cir.1984). The decisions of the Secretary and the Departmental Grant Appeals Board are to be upheld as long as there is a "rational basis for the Secretary's interpretation of the statute and the regulations." Id. at 326; see also St. Elizabeth Community Hospital v. Heckler, 745 F.2d 587, 592 (9th Cir.1984) (federal agency's interpretation of its regulations must be reasonably susceptible to construction placed upon them by Secretary and must sensibly conform to purpose and wording of regulations). In short, the plaintiff's burden in attacking the agency's interpretation of its own statutory scheme is a heavy one. Williams v. St. Clair, 610 F.2d 1244, 1249 (5th Cir.1980).

ISSUE 1: MAY A STATE SURVEY AGENCY VALIDLY CERTIFY A SKILLED NURSING FACILITY WHEN THE FACILITY IS NOT IN COMPLIANCE WITH "CONDITIONS OF PARTICIPATION" BASED ON A PLAN OF CORRECTION?
The Secretary's position is that certification is always improper when a condition level deficiency exists. The plaintiff argues that a facility can properly be certified even if a condition is out of compliance provided that the patients' health and safety is not jeopardized and an acceptable plan of correction is submitted to the state survey agency. The manual published by the HHS, the State Operations Manual, clearly provides in § 2320 that:
Failure to comply with a required Condition of Participation indicates a serious breakdown in one of the major health care or safety systems of the facility. Therefore, if a Condition of Participation, or Coverage, is not met, a [provider] agreement cannot be entered into or renewed, and any existing agreement is subject to cancellation or termination.
The record is replete with testimony by Kemp of the MHCC and others that they *83 knew that certification of a facility with condition level deficiencies was improper under the State Operations Manual. However, the plaintiff argues that the State Operations Manual, which is based upon the federal regulations, is outdated and does not accurately reflect the current applicable regulations. Considering the plaintiff's assertion, the court relies on the applicable statutes and regulations.
As previously stated, an agency's interpretation of its own regulations is to be followed unless compelling reasons indicate that such interpretation is incorrect. Williams v. St. Clair, 610 F.2d 1244, 1249 (5th Cir.1980); see also Potter v. James, 499 F.Supp. 607, 612 (M.D.Ala.1980) (interpretation by Secretary of HHS of federal regulations found in Secretary's Medical Assistance Manual to be followed absent compelling reasons showing that interpretation is wrong). The federal regulation that sets forth the requirements for a SNF financed by Medicaid, such as Hotel Reed, is 42 CFR § 442.202 (1984), which provides in pertinent part:
The SNF must meet 
(a) The definition of a "skilled nursing facility" in § 440.40(a) of this subchapter;
(b) The definition in section 1861(j) of the Act; and
(c) The standards specified in Part 405, Subpart K, of this chapter: Conditions of participation; skilled nursing facilities, except for provisions waived under that subpart or accepted by the Secretary of the State survey agency under a plan of correction as specified in Subpart B of this part.
Both the plaintiff and the defendants cite this regulation in support of their respective arguments. The plaintiff interprets the regulation to mean that SNF's must meet the conditions of participation except for those conditions waived or accepted under a plan of correction. The defendant construes the regulation to mean that SNF's must meet the "standards" set forth in part 405, Subpart K entitled "Conditions of participation; skilled nursing facilities," except for those "standards" waived or found acceptable after submission of a plan of correction. The court concludes that the defendant's construction of the regulation is correct. To accept the plaintiff's interpretation, it would be necessary to give a layman's construction to the word "standards" in § 442.202(c) instead of the interpretation recurring throughout the applicable regulations that a "standard" is a deficiency that is less severe than a "condition" deficiency. Similar provisions in the Medicare regulations support this court's interpretation. One Medicare provision states that:
If a provider or supplier is found to be deficient with respect to one or more of the standards in the conditions of participation or conditions for coverage, it may participate in or be covered ... only if the facility has submitted an acceptable plan of correction for achieving compliance within a reasonable period of time ... [and] [t]he existing deficiencies ... neither jeopardize the health and safety of patients nor are of such character as to seriously limit the provider's capacity to render adequate care.
42 CFR § 405.1907(a)(1984). Another Medicare provision states in pertinent part:
In order to be approved for participation in or coverage under the Medicare program a prospective provider or supplier must:
(2) Be in compliance with the applicable conditions prescribed in Subparts J, K, L, M, N, Q, or U of this part....
42 C.F.R. § 405.1901(b)(2). (The applicable subpart in this case is Subpart K which governs SNF's). See also 42 C.F.R. § 405.1903 (1984) (provider not in compliance with conditions is not eligible to participate in program). In further support of the defendant's interpretation, the court notes that a number of courts have stated in dicta that conditions of participation must be met in order for a Medicare or Medicaid facility to be certified. See, e.g., Smith v. Heckler, 747 F.2d 583, 588 (10th Cir.1984) (plaintiffs not challenging substantive medical standards, or "conditions of participation," *84 which states must satisfy, but rather the Secretary's enforcement mechanism); Northlake Community Hospital v. United States, 654 F.2d 1234, 1236 (7th Cir.1981) (if Medicare institution fails to maintain compliance with prescribed conditions of participation, Secretary can terminate institution's provider agreement at any time); Geriatrics v. Colorado State Dept. of Health, 650 P.2d 1288, 1982 (Colo. Ct.App.1982) (Medicaid facility must meet conditions of participation).
The plaintiff also relies on certain provisions of the Federal Register to support its argument that certification is proper even when one or more conditions of participation are not met. A pertinent provision states:
Under the proposed rules, provider agreements for both programs will be made effective on the completion date of the on-site health and safety certification survey, if all Federal requirements are met on that date. If all requirements are not met, the agreement would be made effective on the date which (1) HCFA for Medicare or the state survey agency, for Medicaid, determines that all requirements are met, or (2) the facility submits a plan of correction or waiver request that is acceptable to HCFA (for Medicare) or the state survey agency (for Medicaid)....
Federal Register, Vol. 45, No. 67, pp. 22933, 22934. In conjunction with this provision, the plaintiffs cite to a comment clarifying that the final regulations had been revised to specify that "all Federal requirements" referred to in the above provision "includes the health and safety requirements (conditions, standards, factors, and elements), financial interest disclosure and the civil rights provisions of 45 CFR Parts 80, 84, and 90." Federal Register, Vol. 45, No. 67, p. 22934. (emphasis added). The plaintiff thus argues that certification is proper where there is an acceptable plan of correction even when a condition level deficiency exists. In further support of its argument, the plaintiff cites 42 CFR § 442.117(a) which states:
A survey agency must terminate a facility's certification if it determines that  (1) The facility no longer meets applicable conditions of participation (for SNFs) ... specified under Subparts D, E, F, or G of this part; and (2) The facility's deficiencies pose immediate jeopardy to patients' health and safety.
The provisions cited by the plaintiff apparently lend some support to its interpretation that certification may be proper even when a condition level deficiency exists. However, even assuming that this were a correct statement of the law, the plaintiff cannot prevail since the court concludes that the Appeal Board's finding that the deficiencies posed an immediate threat to the patients' health and safety is supported by substantial evidence and should be upheld.
42 CFR § 442.105 (1984) governs the certification of SNF's and ICF's. This section provides:
If a survey agency finds a facility deficient in meeting the standards specified under Subpart D, E, F, or G of this part, the agency may certify the facility for Medicaid purposes under the following conditions: (a) The agency finds that the facility's deficiencies, individually or in combination, do not jeopardize the patients' health and safety, or seriously limit the facility's capacity to give adequate care. The agency must maintain a written justification of these findings. (b) The agency finds acceptable the facility's written plan for correcting the deficiencies. (emphasis added).
The plaintiff first argues that the health and safety of the patients was never in jeopardy and that the testimony of Cain and Kemp and their employees all support this conclusion. What may constitute a threat to the life and safety of another is inherently subjective, and for that reason the federal regulations were enacted to provide some objective standard, albeit arguably imperfect,[3] for determining when *85 the patients of a nursing facility are receiving such inadequate care that a health or safety-threatening situation exists. Nine of a possible eighteen conditions of participation, composed of a number of "standards", were found out of compliance at Hotel Reed.[4] Some of the deficiencies noted included the absence of adequate dental and nursing services, inadequate facilities for the physically handicapped and the lack of a plan for patient activities. Further, some of the patients' files lacked medical histories, physical examination reports, monthly progress notes, social histories and activity plans. The bathroom facilities were found to be inadequate in that they were not located near each patient's room, and many of the walls, ceilings, floors and doors needed replacing or repairing. The most telling of all deficiencies were those recorded with respect to the "nursing services" condition of participation. As to this condition, the surveyors noted that drugs were not always being recorded properly; that the drugs ordered were not always noted as given; that pulse rates were not always noted prior to the administration of cardiogenic drugs; that patient daily care charts were inconsistently charted as to oral hygiene, bowel movement, nail care and appetites for each shift; and that "foley" bags were found touching the floor and appeared not to have been emptied for an unreasonably long period of time. These findings clearly support the Secretary's and Appeal Board's conclusions that the health and safety of the patients of Hotel Reed was in jeopardy.
Further, as the Appeals Board ruled, the determination by the state survey agency as to whether the health and safety of the patients is or is not threatened must be supported by written justifications as required by 42 CFR § 442.105(a)(1984). The only written reasons sent to the HCFA were those of the MHCC showing nine of eighteen conditions of participation not in compliance with the federal regulations. The plaintifs submit that Kemp, Cain and their employees testified that, in their respective opinions, the health and safety of Hotel Reed's patients was not in jeopardy. As the Appeals Board ruled, this self-serving testimony fails to impeach the MHCC's own written findings. The plaintiff argues that Kemp's and Simmons' notes made when they conducted their inspections of Hotel Reed should satisfy the written justifications requirement. However, Kemp characterized his inspections as "superficial" and Simmons never submitted his notes to the HCFA, as he testified that he was unable to locate them. The Appeals Board ruled that this evidence offered by the plaintiff failed to impeach the MHCC's written survey results suggesting that the patients' health and safety was threatened. The court concludes that the Appeals Board did not rule arbitrarily, capriciously or contrary to law with respect to this issue.
The court now considers the method by which the plan of correction was accepted by the state survey agency. The initial plan of correction submitted to the MHCC on May 27, 1982 was unsigned. However, the MHCC based its certification on that plan and certified Hotel Reed on May 31, 1982. A signed plan was not received until June 11, 1982, which was also found not to be totally acceptable by the MHCC because some of the completion dates proposed for correcting the deficiencies were for a period longer than 90 days after the survey. Instead of returning the correction plan to Hotel Reed, Kemp of the MHCC testified that he corrected the completion dates himself on June 28, 1982, following a telephone conversation with the administrator of Hotel Reed, the results of which were summarized in a subsequent letter. This acceptance of the plan of correction occurred nearly one month after the certification of Hotel Reed by the MHCC based on the initial plan of correction. The Appeals *86 Board ruled that the certification by the MHCC on May 31, 1982 was improperly performed and that the MMC should not have issued the provider agreement on July 2, 1982, effective June 1, 1982, based upon this certification. The court concludes that the Board's ruling was neither arbitrary, capricious nor contrary to law.

ISSUE NO. 2: DOES SUBSTANTIAL EVIDENCE SUPPORT THE FINDING THAT HOTEL REED WAS NOT IN COMPLIANCE WITH THE CONDITIONS OF PARTICIPATION AT THE TIME OF THE SURVEY ON MAY 11-12, 1982 OR BY JUNE 1, 1982?
That the plan of correction was not fully accepted by the MHCC until June 28, 1982 adequately answers this question. The plaintiff attempts to support its contention that the deficiencies were corrected as of June 1 by offering the oral testimony of those state officials involved in the certification process and the owner and employees of Hotel Reed. As stated previously, the plaintiff, in doing so, seeks to impeach its own written findings of nine of eighteen conditions being out of compliance on the survey date. Given the magnitude and extent of these deficiencies on May 12, it is not reasonable to believe that they could have been corrected by June 1. In fact, Hotel Reed's administrative supervisor testified that a dental services contract, a condition of participation, was not signed until August 31, 1982. Further, the court notes that a total of six standard level deficiencies existing in the physical environment condition of participation had corrected completion dates past August 31, 1982. In sum, substantial evidence exists to support the finding that all "conditions" had not been met either by May 11-12, 1982 or by June 1, 1982.

ISSUE 3: SHOULD THE HCFA HAVE CONSIDERED AN ALTERNATIVE TO DECERTIFICATION AS PROVIDED IN THE OMNIBUS RECONCILIATION ACT OF 1980, 42 U.S.C. § 1396a?
The plaintiff argues that an alternative to decertification that would have served the interests of the patients while still penalizing the nursing facility for its lack of compliance would have been prohibiting any payment of Medicaid funds to individuals admitted to Hotel Reed after a specified date. The statute setting forth this alternative provides:
[W]here a State determines that a skilled nursing facility or intermediate care facility which is certified for participation under its plan no longer substantially meets the provisions of section 1395x(j) of this title or section 1396d(c) of this title, respectively, and further determines that the facility's deficiencies 
(A) immediately jeopardize the health and safety of its patients, the State shall provide for the termination of the facility's certification for participation under the plan and may provide, or
(B) do not immediately jeopardize the health and safety of its patients, the State may, in lieu of terminating the facility's certification for participation under the plan, provide
that no payment will be made under the State plan with respect to any individual admitted to such facility after a date specified by the State.
42 U.S.C. § 1396a(i) (1983). The statute clearly means that the alternative for decertification is an option vested in the state agency, not the HCFA. Assuming, however, that the MMC had instituted this alternative to decertification, the Secretary would still have been entitled to decertify Hotel Reed since the "intermediate sanction" of denying payment to a noncomplying facility for new admissions after a specified date is a sanction in addition to the existing sanction of termination. In other words, the Secretary is not precluded from determining that termination is in order even when a facility is already being penalized by being refused federal funds for new admissions. Federal Register, Vol. 50, No. 35, p. 7192 (proposed rules). Therefore, the court concludes that the Appeals Board's ruling with respect to this issue is neither arbitrary nor contrary to law.

*87 ISSUE NO. 4: DID THE HCFA PROPERLY EXERCISE ITS "LOOK BEHIND" AUTHORITY?
The relevant provision setting forth the Secretary's "look behind" authority is codified at 42 U.S.C. § 1396a(a)(33)(B)(1983). The statute states that a state plan for medical assistance must provide that the state survey agency responsible for licensing health institutions will determine whether health facilities meet the federal requirements for participation. If, however, the Secretary has "cause to question the adequacy of such determinations, the Secretary is authorized to validate State determinations and, on that basis, make independent and binding determinations concerning the extent to which individual institutions and agencies meet the requirements for participation." Id. As stated in the statute, the Secretary is only authorized, not required, to make an independent investigation or inspection. The plaintiff, however, relies on a recent Tenth Circuit decision, Smith v. Heckler, 747 F.2d 583 (10th Cir.1984), where the Tenth Circuit held that the Secretary has a duty to establish a system to adequately inform her agency that the facilities are truly satisfying the federal requirements and that, in enforcing these requirements, the Secretary must assure herself that the facilities, as surveyed by the states, are in more than "paper compliance" with the requirements. Id. at 590.
The plaintiff argues that the HCFA did not conduct its own inspection of Hotel Reed until sometime subsequent to the state survey agency's inspection for recertification on September 27, 1982 and that, under Smith v. Heckler, the HCFA should have made its independent inspection upon receipt of the state's determination in May 1982 that Hotel Reed was in compliance based upon a plan of correction. Instead of making this on-site inspection and then reaching a determination as to whether Hotel Reed was in compliance, the HCFA decided to decertify and terminate Hotel Reed based only on the documents submitted by MHCC and MMC.
The factual situation presented in Smith v. Heckler is materially different from the situation in this case. In Smith, the plaintiffs argued that the Secretary had a duty to insure that the facilities actually performed those functions required by the state plan instead of just relying on the state survey agency's findings in order to prevent the situation of a state's certifying the facility to receive federal funds when the facility's deficiencies pose a threat to the health and safety of its patients. See id. at 587-88. The situation is entirely different in this case. The plaintiff does not charge that the Secretary improperly provided federal matching funds in reliance on a state survey agency's findings of compliance but rather argues that the Secretary improperly refused to provide matching funds in reliance on the state's survey determination that certification was warranted even though nine of eighteen conditions of participation were not in compliance with the federal regulations. To require the Secretary to conduct her own inspection in such circumstances would be unreasonable.
The plaintiff finally argues that the HCFA did not inform the plaintiff of the Secretary's concern over the MHCC's findings until August 25, 1982 and that this was an unreasonable delay. As found by the Appeals Board, the MHCC's certification did not facially show any noncompliance with the conditions of participation. Considering this finding and the fact that the HCFA did not receive the copies of the survey and certification report until June 25, 1982, the court concludes that the Appeals Board's ruling that HCFA did not unreasonably delay expressing concern over the state's certification is not arbitrary, capricious or contrary to law.
For the reasons stated herein, the defendants' motion for summary judgment should be granted and the plaintiff's motion for summary judgment should be denied. A separate judgement will be submitted in accordance with the local rules.
NOTES
[1] See appendix I. Condition level deficiencies, or "conditions", referred to as "conditions of participation" in the federal regulations, are defined as the most severe deficiencies that can exist in a nursing facility. Standard level deficiencies, or "standards", are less severe deficiencies which, cumulatively, may result in a finding that a "condition" exists. See 42 CFR § 405.1906 (1984).
[2] Simmons apparently relied on 42 CFR § 442.13(c)(2)(1984) to backdate the effective date of the agreement to June 1. This section provides that, where federal requirements are not met on the date of the survey, the provider agreement is effective on the date that the facility submits an acceptable plan of correction to the state survey agency.
[3] See generally Comment, The Need to Change Traditional Entitlement-Doctrine Analysis in De-certification of Nursing Homes, 59 N.C.L.REV. 943 (1981) (discussing Medicare and Medicaid financing structure and problems inherent with that structure).
[4] A listing of the conditions of participation and the "standards" of which the "conditions" are composed is found at 42 C.F.R. §§ 405.1101-1137(1984).