934 F.2d 853
 33 Soc.Sec.Rep.Ser. 513, Medicare&Medicaid Gu 39,414
STATE OF INDIANA by the INDIANA DEPARTMENT OF PUBLIC
WELFARE, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, M.D., Secretary of the United States
Department of Health and Human Services, and
United States Department of Health and
Human Services, Defendants-Appellees.
 No. 90-3797.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 6, 1991.
Decided June 4, 1991.
 
 Linley E. Pearson, Atty. Gen., Gordon E. White, Jr., Dist. Atty. Gen., Indianapolis, Ind., for plaintiff-appellant.
 Sue Hendricks Bailey, Asst. U.S. Atty., Indianapolis, Ind., for Louis W. Sullivan.
 Sue Hendricks Bailey, Asst. U.S. Atty., Valerie Feldman, Asst. Regional Counsel (argued), Dept. of Health and Human Services, Region V, Office of the Gen. Counsel, Chicago, Ill., for Department of Health and Human Services.
 Before CUMMINGS and EASTERBROOK, Circuit Judges, and WILL, Senior District Judge.*
 CUMMINGS, Circuit Judge.
 
 
 1
 The single issue presented by this appeal is whether the Secretary of Health and Human Services ("Secretary") can require long-term care facilities to have patients in residence before certifying them for Medicaid participation. We conclude that the so-called "patient-in-the-home" requirement is valid and thus affirm the district court's entry of summary judgment against the plaintiff.
 
 FACTS
 
 2
 The Secretary disallowed the Indiana Department of Public Welfare ("IDPW" or "the Department") from claiming $2,620,512 in federal funds under the Medicaid program[1] after finding that the Department had improperly certified five intermediate care facilities and seventy community residential facilities.[2] Indiana's survey agency, the State Board of Health, had inspected the new facilities before any patients were admitted. Before certification the facilities thus had been evaluated for structural soundness and safety but had not been checked for compliance with federal standards governing the care and treatment of residents. Taking the position that the limited inspections did not comply with federal Medicaid certification standards, the Secretary disallowed $2,620,512 in federal contributions to the state's payments to the facilities. This amount represented the federal contribution sought by IDPW from the time of initial certification to the time that the Board of Health performed complete certification surveys.
 
 
 3
 IDPW appealed the disallowance decision to the Departmental Grant Appeals Board of the Department of Health and Human Services. When the Board upheld the disallowance, IDPW appealed the Board's decision to the federal district court in the Southern District of Indiana. IDPW now appeals the adverse judgment entered by the district court.
 
 ANALYSIS
 
 4
 The Department argues that the Secretary has improperly imposed a "patient-in-the-home" requirement.[3] The requirement is explicitly stated in a document called the State Operations Manual ("SOM" or "Manual"), compiled by the Secretary and distributed to all states. The Manual directs that "regulations establishing a plan of treatment and clinical records cannot be evaluated until the organization is operating and providing services to the patients." SOM Sec. 2150 (emphasis supplied). The Department concedes that the Manual is unambiguous, but contends the patient-in-the-home provision is invalid because it is a "substantive rule" which must be promulgated in accordance with the notice-and-comment procedures set out in the Administrative Procedure Act ("APA"). See 5 U.S.C. Sec. 553. It is acknowledged that the Manual was not promulgated under those procedures.
 
 
 5
 The Department's position is that to be valid, the patient-in-the-home requirement must be stated in the underlying federal regulations promulgated under APA procedures. The Department finds no patient-in-the-home requirement in the applicable sections of the Code of Federal Regulations, and accuses the Secretary of imposing the requirement by means of the Manual so as to avoid having to subject it to public commentary. The Department believes this practice to be contrary to law and contrary to the dictates of the Manual itself, which obligates compliance only with those standards "required by Federal regulations." SOM Sec. 1012.
 
 
 6
 We disagree with the Department's assertion that the patient-in-the-home requirement springs solely from the State Operations Manual. The requirement, while not explicitly stated in the applicable federal regulations at 42 C.F.R. Part 442,[4] is implicit in those same regulations. The regulations set forth standards for such things as meal services, 42 C.F.R. Sec. 442.331, the administration of medicine, 42 C.F.R. Sec. 442.337, patient recordkeeping, 42 C.F.R. Sec. 442.318, and resident activities, 42 C.F.R. Sec. 442.435. Evaluating compliance with many of these regulations would be impossible in the absence of resident patients. It is difficult to imagine how the accuracy of patient records, for example, could be evaluated without having the patient available for observation. We agree wholeheartedly with the assessment made by the Departmental Grant Appeals Board:
 
 
 7
 Even a cursory review of the regulatory provisions of Subpart F of 42 C.F.R. Part 442 * * * indicates that many of these standards measure the quality of care to patients. Consequently, if the onsite survey is meant to determine whether the provider is meeting these standards, the surveyor can make such a determination only if there are patients in the facility to review.
 
 
 8
 Decision No. 970 at 4 (1988), reprinted at Pl.App. A-15. The standards in 42 C.F.R. Part 442 are nonsensical unless they are read to include a patient-in-the-home requirement. It is thus the Code of Federal Regulations that imposes the patient-in-the-home requirement, not the State Operations Manual.
 
 
 9
 Because the patient-in-the-home requirement is contained in the Code of Federal Regulations, the parallel provision in the State Operations Manual is merely interpretive. Generally speaking,
 
 
 10
 "regulations," "substantive rules" or "legislative rules" are those which create law, usually implementary to an existing law; whereas interpretive rules are statements as to what the administrative officer thinks the statute or regulation means.
 
 
 11
 Cabais v. Egger, 690 F.2d 234, 238 (D.C.Cir.1982), quoting Gibson Wine Co. v. Snyder, 194 F.2d 329, 331 (D.C.Cir.1952). Here any law created was created by the federal regulations. The SOM provision requiring the facilities to be occupied by patients at the time of certification merely clarifies the underlying regulations.
 
 
 12
 It follows that the Department cannot complain of the enforcement of SOM Sec. 2130 even if that particular provision was not promulgated pursuant to APA rulemaking procedures. Interpretive rules are exempt from the APA's notice-and-comment requirements. See 5 U.S.C. Sec. 553(b)(2)(A). Parties opposed to the substantive rules agencies seek to impose on them have an opportunity to object or comment when the rules are proposed in the Federal Register. See 5 U.S.C. Sec. 553(c). The Department could have commented on the patient-in-the-home requirement when 42 C.F.R. Part 442 was first proposed. The APA confers no right to comment on an interpretive rule which merely restates an obligation imposed by properly promulgated federal regulations.
 
 
 13
 Estate of Smith v. Heckler, 747 F.2d 583 (10th Cir.1984), cited for support by the IDPW, does not hold to the contrary. The Department claims that it and the subsequent district court decision on remand, Estate of Smith v. Bowen, 656 F.Supp. 1093 (D.C.Colo.1987), stand for the proposition that "significant" rules should be promulgated as regulations (Pl.Br. 8). More precisely, the Estate of Smith cases address the circumstances under which an agency must formulate regulations to effectuate a statutory mandate. Specifically, the Tenth Circuit found that the Medicaid Act obligated the Secretary to keep continuously informed about the quality of care being provided by nursing facilities and thus ordered the Secretary to promulgate regulations which would help her to do so. Estate of Smith v. Heckler, 747 F.2d at 590. These cases are obviously inapplicable here, because the Secretary has already promulgated regulations in 42 C.F.R. Part 442 furthering the aim of proper provider certification. We are not asking whether additional regulations are warranted but instead are interpreting an existing regulation.
 
 
 14
 The essence of the Department's argument is that the Secretary was improperly enforcing a provision of the State Operations Manual so as to escape having to promulgate a rule in accordance with the requirements of the APA. Because we find that the State Operations Manual merely restated a substantive rule contained originally in the Code of Federal Regulations, we cannot deem the Secretary's disallowance of $2,620,512 to have been arbitrary, capricious, an abuse of discretion or otherwise contrary to law. See Adventist Living Centers, Inc. v. Bowen, 881 F.2d 1417, 1420 (7th Cir.1989).
 
 
 15
 The district court's grant of summary judgment to the Secretary is affirmed.
 
 
 
 *
 The Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation
 
 
 [1]
 Title XIX of the Social Security Act, 42 U.S.C. Secs. 1396 et seq., is commonly known as the Medicaid Act
 
 
 [2]
 Once the state and the facility sign a provider agreement, federal funds normally become available under the Medicaid Act. The provider agreement will not establish that the facility has been certified for Medicaid participation, however, unless the survey agency applies the proper certification standards. See 42 C.F.R. Sec. 442.30(a)
 
 
 [3]
 The Department does not contest the factual findings made by the Board, namely that there were no patients in the facilities at the time they were initially certified and that patient-related aspects of the survey were deferred
 
 
 [4]
 42 C.F.R. Part 442 is entitled "Standards for Payment for Skilled Nursing and Intermediate Care Facility Services." Part 442 generally sets out the proper certification procedure. Subparts F and G specifically address the personnel, recordkeeping, medical, and health and safety standards which must be met before the facility can be certified