**In re the ESTATE OF Michael Patrick SMITH, et al., Plaintiffs,**

**and**

**People of the State of Colorado, et al., Plaintiffs in Intervention,**

**v.**

**Otis R. BOWEN, et al., Defendants.**

**Civ. A. No. 75–M–539.**

United States District Court, D. Colorado.

March 24, 1987.

Kathleen Mullen and John R. Holland, Denver, Colo., for plaintiffs.

Maurice Knaizer, Colorado Atty. General's Office, Denver, Colo., for plaintiffs in intervention.

Shalom Brilliant, U.S. Dept. of Justice, Civil Div., Vicki Shulkin, Office of General Counsel, Dept. of HHS, Washington, D.C., and James R. Cage, Asst. U.S. Atty., Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

In this class action brought on behalf of Medicaid recipients residing in nursing homes in the State of Colorado, the Secretary of Health and Human Services (the "Secretary") was ordered to "develop and publish a notice of proposed rule making, consistent with the requirements of the APA, regarding a new survey system which will enable the Secretary to perform the duty prescribed by the Tenth Circuit Court of Appeals." Order of August 9, 1985. The Secretary published a Final

Rule in the Federal Register on June 13, 1986 (the "Rule"). On July 14, 1986, the plaintiff class and the State of Colorado, as a plaintiff in intervention, ("plaintiffs"), moved for a declaratory judgment that the Rule was inadequate and sought procedural orders directing the manner in which the Secretary should proceed. This court rejected that interim relief, directed the Secretary to file the full administrative record supporting his Rule and set a review hearing to consider the plaintiffs' challenges. That hearing was held on February 11, 1987. The jurisdiction of this court is found in 28 U.S.C. §§ 1331, 1361, and 5 U.S.C. § 706. The general question is whether the Secretary has complied with this court's order directing compliance with the mandate from the Tenth Circuit Court of Appeals.

The Tenth Circuit defined the Secretary's duty as follows:

> The Secretary has a duty to promulgate regulations which will enable her to be informed as to whether the nursing facilities receiving federal Medicaid funds are actually providing high quality medical care.

*Estate of Smith v. Heckler,* 747 F.2d 583, 591 (10th Cir.1984). In the Rule, the Secretary referred to the former process, in effect since 1974, as a process focused on the structural requirements of facilities more than on resident outcomes, and discussed the work of the Health Care Financing Administration ("HCFA") in developing a new survey system based on demonstrations and experiments which began in 1978. In 1982, HCFA began to develop a new methodology which came to be called the Patient Care and Services ("PaCS") survey. HCFA also sponsored a comprehensive study of the regulation of nursing homes by the Institute of Medicine ("IoM") of the National Academy of Sciences. HCFA further organized meetings and work groups and began to field test PaCS. The Secretary stated in the Rule that:

> Based on the testing results, HCFA decided to implement a refined version of the PaCS survey process. Just as the forms and methodology of the current survey process were not set forth in the regulations, the new forms and instructions are not set forth in these regulations, and any future changes will be implemented through general instructions, without further changes to these regulations. This allows flexibility to revise and improve the survey process as experience is gained.

Consistent with that conclusion, the Secretary described the new survey system in the Rule, emphasizing Part B, the PaCS survey system. The PaCS survey system was described in the following language:

> Part B of the new survey is the refined version of the resident-oriented process that has been known heretofore as PaCS. All SNFs and ICFs undergo a Part B survey on an annual basis. The Part B process and forms concentrate on the areas of the traditional survey that are directly related to resident care (nursing services, physician services, dietary services, resident activities, etc.) The new approach stresses resident outcomes and the actual provision of care and services. Surveyors cite deficiencies directly from the review of resident care and treatment rather than from a review of policies and procedures.
>
> The Part B survey is designed to provide a more valid and reliable assessment of the quality of care furnished by a nursing home. Through the in-depth review of a representative sample of residents, surveyors are able to identify more accurately resident needs and problems and, subsequently, to determine how well care is being provided to meet those needs. In addition, by requiring surveyors to follow specific procedures and to perform resident review using a specified checklist, Part B promotes greater consistency in methodology and findings than has been achieved under the process....

The critical focus of the PaCS system as described in the Rule is the observation and interviewing of a representative sample of residents. That is accomplished using forms, including "structured worksheets" to record the findings made in the areas of interest. Surveyors are also asked to eval-

uate the physical condition of each resident in the sample against a "prescribed set of criteria." The medical records of the persons in the sample are then reviewed to determine the adequacy of the facility's assessment and care of the patient's needs. The surveyors additionally observe dining, eating assistance and drug administration. The surveyors develop deficiency statements based on this process. In describing the effect of the Rule, the Secretary stated that:

> The final rule amends the Medicaid regulations to emphasize that the State survey agency must follow the survey methods and procedures prescribed by HCFA that are current at the time of the survey.

The only change in the regulations resulting from the Rule is a change in 42 C.F.R. § 442.30(a)(4). That regulation states that a provider agreement is not valid evidence that a facility has met the requirements of Medicaid participation, if HCFA determines that:

> (4) The survey agency failed to use the Federal standards, and the forms, methods and procedures prescribed by HCFA in current general instructions, as required under § 431.610(f)(1) of this chapter, for determining the qualifications of providers;[1]

Formerly, this subsection said:

> (4) The survey agency failed to use the Federal standards and the forms, methods, and procedures required under § 431.610(f)(1) for determining qualifications of providers;

None of the survey forms and guidelines was published in the Rule, and no details were given concerning the criteria for assessing the physical condition of the patients, as well as the standards for determining deficiencies. As a result, there is confusion and uncertainty about the components of the PaCS system. Sandra Casper, a consultant with Rehabilitation Care Consultants of Madison, Wisconsin, testified that Plaintiffs' Exhibit 16 is an early draft of guidelines and instructions for surveyors. It contains detailed questions to be asked on the interviews and specific guidelines for observation. Plaintiffs' Exhibit 18 is a training manual developed for use in training the survey teams at a later stage in the development of the new methodology. It includes detailed guidelines with worksheets to be used in the observation and interview process. Ms. Casper criticized both the guidelines and training manual for a lack of established criteria for the hiring of surveyors and for the failure to require the use of a patient assessment form by the facilities.

Patricia Vanderleast, Associate Director in the Colorado Department of Health, who is responsible for long-term care surveys in the State of Colorado, said that she received Plaintiffs' Exhibit 18 at a March, 1986 training session for those who would teach surveyors how to conduct a PaCS survey. Dana Petrowsky, an administrator of the Iowa Health Department, identified Plaintiffs' Exhibit 18 as the manual which is now being used in Iowa by the survey teams. She had never seen the PaCS guidelines set out in Plaintiffs' Exhibit 1, Tab C.

What appears from the testimony at the review hearing is that there is uncertainty about what components constitute the PaCS system. Differing guidelines appear to be in use in different states. This uncertainty is the primary basis for the contention that the Secretary has not complied with his duty because he has not promulgated a rule providing a sufficient description of, or the actual substance of the survey system being mandated for use by the state agencies.

This court agrees with that contention and finds the Rule inadequate. The refusal of the Secretary to be bound by specific procedures, guidelines and forms is a dereliction of his duty as defined in this litigation. The essence of the ruling of the Court of Appeals is that the United States Congress has directed the Secretary to re-

---

1. While read literally, there can be an ambiguity as to whether the Rule requires use of the forms and methodology current at the time of the Rule's adoption, or as they may be at the time of the actual survey, the Secretary's intention is the latter.

quire the facilities to provide such care to Medicaid patients as the Secretary directs through the inspection of care program and the survey certification program. There is no legislative definition of "quality health care," and there can be none. It is something which emanates from the process of regulation. The methodology prescribed is the vehicle by which the Secretary will become "informed as to whether the nursing facilities are actually providing high quality medical care." *Estate of Smith v. Heckler,* 747 F.2d at 591. Thus, the method is the medium both for defining the expected level of care and for determining performance.

The need for a definitive and certain methodology is also readily apparent from the variations in the operations of state agencies and the levels of state funding for those agencies. State survey agencies play the critical role in determining whether facilities participating in Medicaid are providing high quality medical care. Several witnesses testified that the PaCS methodology gives surveyors considerable discretion in deciding whether a facility is in compliance. The Secretary needs to adequately define and guide the state surveyors' functions to ensure that there is uniformity in evaluating the delivery of health care. Uniform guidelines are imperative for achieving that goal. Publishing the guidelines and forms will assist the state agencies in determining what personnel qualifications are required to perform the survey work.

■ The failure of the Rule to include the specifics of the PaCS survey system also raises a procedural due process concern. The plaintiffs fear that the lack of a definitive PaCS methodology in a regulation and in the conditions of participation may prevent effective enforcement. They suggest that a facility adversely affected by findings of deficiency may successfully challenge enforcement because of a failure to give adequate notice of what is required or expected. There is merit in the argument that the failure to include sufficient detail in the regulation may preclude adequate enforcement under commonly accepted principles of fundamental fairness.

■ The plaintiffs argue that use of the PaCS survey system imposes an affirmative duty on the states and, in turn, on the facilities participating in Medicaid. As a result the PaCS survey system must be characterized as a legislative rule, subject to the notice and comment requirements of section 553 of the Administrative Procedure Act ("APA"). In *American Hospital Association v. Bowen,* 640 F.Supp. 453 (D.D.C. 1986), the court applied that reasoning in the implementation of the Peer Review Organization (PRO) procedures under the Medicare Act. Congress requires the use of the PRO procedures to evaluate the quality of care pursuant to the inspection of care provisions under the Medicare Act. This court agrees with the analysis made in *American Hospital Association,* and it is equally applicable to the survey certification process under Medicaid. The survey certification process and the inspection of care process are both required by Congress to determine whether quality care is being provided to residents.

The plaintiffs also contend that the Rule is procedurally defective because it does not contain an adequate statement of basis and purpose as required by 5 U.S.C. § 553(c). Principally, they contend that the Secretary had the duty to discuss in detail his reasons for the failure to incorporate the IoM findings in the Rule. Similarly, the plaintiffs assert that the Secretary did not provide sufficient time for comment. The Notice of Proposed Rule Making ("NPRM"), published October 31, 1985, set a deadline of December 30, 1985 for comments to be received. The sufficiency of this time frame must be considered in the context of three important factors. First, the NPRM did not describe the PaCS system in sufficient detail to generate considered comment, and it was necessary for interested parties to obtain copies of the proposed survey methodology and forms by contacting HCFA in Baltimore. Second, the IoM study did not become available to the general public until February 1986, after the comment period closed, and numerous commenters requested an extension of time to allow them to consider that report

before making comment. The Secretary refused those requests. Third, the subject of health care in nursing homes involves such great numbers of interested persons and organizations, including governmental units, that a reasonable time would include time for groups and organizations to go through their own bureaucratic processes to arrive at their comments. For example, the Massachusetts Ombudsman requested an extension of the comment period because "there has not been sufficient time for the Massachusetts Ombudsman Program to review them [proposed changes to the Medicaid regulations] and make our comments." Plaintiffs' Exhibit 1, Tab D. Similarly, CARIE, the Coalition of Advocates for the Rights of the Infirm Elderly, requested that the comment period be extended to give consumers and providers an opportunity to meaningfully assess the new PaCS system. *Id.* Citizens for Better Care wrote: "CBC strongly urges that an additional 60 days be added to the comment period. We did not receive materials until December 9th which is insufficient time for Citizens for Better Care Board and Committees to review the materials and provide comments." *Id.*

Finally, the plaintiffs contend that the Rule is invalid because it represents a decision which is arbitrary and capricious and, therefore, reversible under the APA. The contention is that the Secretary's findings are contradicted by the IoM study. That study cited five major problems with the PaCS system. Plaintiffs' Exhibit 1, Tab. G, 132–133. First, the PaCS survey system is being implemented without changing the conditions of participation. Those conditions remain facility oriented and do not include quality of life factors. Second, the PaCS survey system does not include statistically valid sampling procedures "to achieve valid, consistent, and reliable findings that can be sustained in enforcement proceedings." Third, the PaCS system does not have guidelines with criteria for assisting surveyors in making decisions as to whether care problems demonstrated by a facility constitute deficiencies. Instead, these decisions are left to "unguided surveyor judgment." Fourth, the PaCS sys-

tem does not require the facilities to maintain standard resident assessment data. Fifth, the PaCS survey procedures are not integrated with the inspection of care procedures. To resolve these problems, the IoM study recommended that the PaCS system should include new conditions of participation, statistically defensible sampling procedures, guidelines for determining deficiencies, and a standard resident assessment procedure. The IoM also recommended that the PaCS survey system be integrated with the inspection of care functions.

An internal memorandum written by Dr. William Roper, dated September 5, 1986, made an assessment of the IoM study for the Secretary. In that memorandum, Dr. Roper recommended accepting or accommodating most of the IoM recommendations with changes in the regulations and some legislative proposals.

An assessment of the plaintiffs' argument that the decision of the Secretary is arbitrary and capricious because it is contradicted by the IoM study must be made with the recognition of the limitations on this court's proper role. Both under mandamus and under the limited review jurisdiction provided by the APA, this court is required to accept the Secretary's decision if it is made within the range of his legislative discretion, and in accordance with APA procedures. The Tenth Circuit stated that the court is not a " 'super agency' and cannot control the specifics of how the Secretary satisfies the duty." *Estate of Smith v. Heckler,* 747 F.2d at 591.

■ Some of the contentions made by the plaintiffs are matters which are inappropriate for decision by this court. Thus, the IoM recommended, and the plaintiffs insist that, to be adequate, the Rule must require the use of a patient assessment form by the facility. That is an assessment of the patient's condition and need for treatment. Such a form would obviously be helpful in developing a program of care for that patient, and the existence of it in the medical records would be helpful to the surveyors. It is also apparent that there would be merit in combining the PRO re-

view under the inspection of care program with the survey certification process to avoid undue interruption of the operations of the facility, and to bring the skills and experience of the medical review personnel into the survey team. Apparently, the only inhibition for such a merger is that the inspection of care program requires a review of the care of all of the patients, whereas the survey certification process can be limited to a representative sample. There is, additionally, the question of what is a representative sample, and the plaintiffs sought at the review hearing to introduce expert testimony on the subject of statistics to show the inadequacy of the present requirement. The many variables involved in the assessment of the different kinds of patients who are provided for in the system, the assessment of their needs, and the methodologies for care, are all factors which involve the special expertise of the Secretary and, of course, the medical profession in all its variants. These are matters which are beyond this court's competence.

In refusing the plaintiffs' request to enjoin the rulemaking process while it was underway, this court adhered to its position that the methodology finally adopted must be the result of the processes mandated by the APA. There is considerable contrast between that process and the adjudicative processes of the court in adversary litigation. The APA process is broadly democratic with wide participation by all those who may be affected or interested in the program. It is an open process and is not restricted by the limitations of the Federal Rules of Evidence. That openness not only gives an opportunity for the decision maker to consider a very broad range of material, it also should result in a decision which is widely accepted by those affected.

■ This court concludes that the Rule is invalid because the procedure followed was flawed. The comment period of 60 days was inadequate. The Secretary's failure to extend that period pursuant to the numerous requests to do so was arbitrary and capricious. The NPRM was inadequate because it did not include the guidelines and forms which constitute the system. That information was required for meaningful comment. The Rule, itself, is inadequate because it does not include details of the methodology which defines both the level of care and the duty of the state survey agency. The statement of basis and purpose in the Rule is necessarily flawed because of the failure to provide a sufficient description in the NPRM, and the failure to provide an adequate opportunity for comment.

Upon the foregoing, it is

ORDERED that, on or before June 1, 1987, the Secretary will publish a notice of proposed rule making, consistent with the views expressed in this Memorandum Opinion and Order.