**HILLHAVEN WEST, INC., a Delaware Corporation, d/b/a Alvarado Convalescent and Rehabilitation Hospital, Plaintiff,**

**v.**

**Otis R. BOWEN, M.D., et al., Defendants.**

**Civ. No. 87–0973–B (IEG).**

United States District Court, S.D. California.

July 21, 1987.

Francis J. LaPallo, Barry S. Landsberg, Casson, Calligaro & Mutryn, Los Angeles, Cal., for plaintiff.

Anne S. Pressman, Deputy Atty. Gen., Beth Levine, Asst. U.S. Atty., for defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER

GORDON THOMPSON, Jr., Chief Judge.

Plaintiff's motion for preliminary injunction was heard on July 13, 1987. The court has considered the papers filed by the par-

ties, both with respect to the preliminary injunction motion and previously filed in connection with the plaintiff's application for a temporary restraining order, and has heard and considered the arguments. Accordingly, the court hereby issues its findings of fact, conclusions of law and order.

## I. FINDINGS OF FACT

*Parties*

1. Plaintiff Hillhaven West, Inc. ("Hillhaven") is a Delaware Corporation with its principal place of business in Tacoma, Washington. Hillhaven owns and operates Alvarado Convalescent and Rehabilitation Hospital ("Alvarado").

2. Defendant Otis R. Bowen, M.D. (the "Secretary"), the Secretary of the United States Department of Health and Human Services, is statutorily responsible for the administration of the Medicare Program, 42 U.S.C. § 1395 *et seq.*, and the administration of federal responsibilities under the Medicaid Act, 42 U.S.C. § 1396–1396n.

3. Defendant Kenneth W. Kizer, M.D., M.P.H. is the Director of the California Department of Health Services, (the "DHS"). DHS is responsible for administering California state responsibilities under the Medicaid Act.

*Regulatory Background*

4. The Medicare program is a federal program under which qualified health care providers, including skilled nursing facilities, are reimbursed by the federal government for health care services provided to qualified program beneficiaries.

5. The Medicaid program is a cooperative state-federal program which provides medical assistance to needy persons. Both the federal and state governments contribute to its funding. In California the Medicaid program is known as "Medi-Cal".

6. In order for a nursing home to participate in the Medicaid or Medicare programs and be paid for care and services delivered to beneficiaries of such programs, the nursing home must be certified as being in substantial compliance with the federal regulations set forth in 42 C.F.R. § 442 and 42 C.F.R. § 405. A nursing home which meets specified federal requirements may participate in the Medicare or Medicaid programs by entering into a provider agreement with appropriate state or federal agencies.

7. A provider agreement is a contract in which a nursing home agrees to provide care and services to beneficiaries of the Medicare or Medicaid program in compliance with state and federal law in return for payment at prescribed rates. A nursing home which is eligible and desires to participate in the Medicare program established by Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, is required to enter into a provider agreement with the federal Department of Health and Human Services Health Care Financing Administration ("HCFA").

8. A nursing home which is eligible and desires to participate in the Medi-Cal program must enter into an agreement with the California Department of Health Services.

9. The requirements for a nursing home classified as a skilled nursing facility to participate in the Medicare program are prescribed by federal regulations. 42 C.F.R. § 405.1101–.1137. The requirements for a nursing home classified as a skilled nursing facility to participate in the Medicaid program are also prescribed by federal regulations. 42 C.F.R. § 442.-200–.202.

10. The requirements prescribed by federal regulations for nursing homes wishing to participate in the Medicare or Medicaid program are classified as "conditions of participation," "standards" and "elements." Failure of a skilled nursing facility to substantially meet one or more of the "conditions of participation" is cause for termination of a provider agreement. 42 C.F.R. § 489.53.

11. Nursing homes which participate in the Medicare or Medicaid program are inspected, or surveyed, at least annually on site to determine whether the quality of care and services delivered satisfies federal requirements.

12. Under § 1864 of the Social Security Act, 42 U.S.C. § 1395aa, the Secretary and by delegation HCFA, is authorized to enter into agreements with individual state agencies pursuant to which the state agency is utilized to inspect, or survey, nursing homes to ascertain whether the nursing home meets the conditions or meets the requirements for participation in the Medicare program.

13. DHS has entered into a contract with HCFA pursuant to § 1864 of the Social Security Act and is designated as the nursing home survey agency in the State of California.

14. The § 1864 agreement between DHS and HCFA and federal regulations require DHS to conduct nursing home surveys using the standards, criteria and methodologies prescribed by the federal government. Federal regulations state that a "state survey agency must use the forms, survey methods and procedures that are prescribed by HCFA...." 42 C.F.R. § 405.1906, 51 Fed.Reg. 21,557 (June 13, 1986). *See also* 42 C.F.R. § 442,250 *et seq.* and 42 C.F.R. § 405.1101 *et seq.*

15. The determination whether a nursing home satisfies the requirements for participation in the Medicare program is made by HCFA based on the findings and recommendations reported by state surveyors following on-site inspection of care and treatment in the nursing home. A nursing home which is terminated from the Medicare program is entitled to a hearing before a federal administrative law judge.

16. Where the annual certification survey yields a determination that a facility does not substantially comply with one or more conditions of participation, the facility may be terminated as a Medicare and Medicaid provider.

17. When the Secretary terminates or refuses to renew a Medicare agreement with a skilled nursing facility, the state Medicaid agency must deny, terminate or refuse to renew its Medicaid agreement with that skilled nursing facility. The denial, termination or refusal to renew the Medicaid agreement must be effective on the same date as the denial, termination or refusal to renew the Medicare agreement. 42 C.F.R. § 442.20(2)(b).

18. The Secretary requires state agencies to use a specific survey process called the Patient Care and Services ("PaCS") Survey in performing certification surveys of nursing homes participating in the Medicare programs.

*Factual Background*

19. On several occasions during early 1987 DHS employees visited Alvarado to conduct Medicare certification surveys on behalf of HCFA.

20. The DHS surveys of Alvarado were conducted pursuant to HCFA's PaCS rule.

21. In a letter dated April 30, 1987 HCFA notified Alvarado that, because the facility failed to satisfy two conditions of participation, HCFA would not renew Alvarado's Medicare provider agreement. HCFA informed Alvarado that its Medicare provider agreement would expire on June 5, 1987 and that reimbursement for Medicare beneficiaries residing at Alvarado would terminate on July 3, 1987.

22. Because the Secretary's rules require Medicaid certification decisions to conform with Medicare certification decisions, this action by HCFA meant that Alvarado's Medi-Cal agreement and reimbursement would expire on the same date as for Medicare.

23. Alvarado has administratively appealed HCFA's non-renewal determination.

24. Alvarado's Medi-Cal beneficiaries cannot receive compensated care at a facility that is not certified to participate in the Medi-Cal program in accordance with HCFA's rules. Accordingly, when the facility's eligibility to receive Medicare and Medi-Cal reimbursement terminates these patients must relocate to other facilities to continue to receive government compensated care.

25. On July 2, 1987, this court, after hearing argument by counsel for Alvarado and for the Secretary, entered a temporary restraining order against the Secretary and DHS enjoining implementation of the non-renewal determination until the present

motion for preliminary injunction could be heard.

## II. CONCLUSIONS OF LAW

1. This court has jurisdiction over this case under 42 U.S.C. § 405(g).

██ 2. With respect to 42 U.S.C. § 405(g), plaintiff has satisfied the non-waivable jurisdictional requirement of presentment of a claim by lodging its administrative appeal. This court holds that exhaustion of administrative remedies is waived in this case for two independent reasons. First, in the absence of such waiver the constitutional and statutory claims that plaintiff raises in this litigation—challenges to the validity of the PaCS rule—would never be heard. Federal administrative agencies are without power or expertise to pass upon the constitutionality of administrative action. *Mathews v. Diaz,* 426 U.S. 67, 76, 96 S.Ct. 1883, 1889, 48 L.Ed.2d 478 (1976); *Weinberger v. Salfi,* 422 U.S. 749, 767, 95 S.Ct. 2457, 2467, 45 L.Ed.2d 522 (1975). The Supreme Court has held that 42 U.S.C. § 405(g) confers jurisdiction where its absence would leave a plaintiff, such as Alvarado, with no forum to adjudicate statutory and constitutional challenges to regulations promulgated by the Secretary. *Michigan Academy of Family Physicians v. Bowen,* 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986). Second, plaintiff's constitutional and statutory challenges to the validity of the PaCS rule are collateral to the claim for reimbursement that it is prosecuting administratively. The Supreme Court has held that federal district courts have jurisdiction to hear such collateral claims. *Bowen v. City of New York,* 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986).

██ 3. In order for a preliminary injunction to issue, the movant must demonstrate either (1) probable success on the merits and possible irreparable injury, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party seeking the preliminary relief. *Adultworld Bookstore v. City of Fresno,* 758 F.2d 1348, 1351 (9th Cir.1985). The two tests are not really separate questions but extremes of a single continuum. That is, the district court must weigh two factors: (a) the strength of the movant's case on the merits, and (b) the balance of hardships to the parties. As the strength of the movant's showing increases with regard to one of these factors, the strength of the showing necessary with respect to the other declines. *Lydo Enterprises v. City of Las Vegas,* 745 F.2d 1211, 1212 (9th Cir.1984).

4. The plaintiff alleges that the PaCS rule was adopted in violation of the notice and comment provisions of the Administrative Procedure Act, 5 U.S.C. § 553, that the PaCS rule is so inherently standardless that any enforcement would be a violation of the Due Process Clause of the United States Constitution, and that the conduct of the surveyors in the inspection at Alvarado violated the Due Process Clause of the United States Constitution. *See Estate of Smith v. Bowen,* 656 F.Supp. 1093, 1099 (D.Colo.1987).

With respect to the allegations that the PaCS rule was adopted in violation of the notice and comment provisions of the Administrative Procedure Act, the court is convinced that the plaintiff has raised sufficiently serious questions going to the merits to make them a fair ground for litigation. However, a review of the record as a whole indicates that success is by no means probable or assured. As noted by the Secretary, the court must take into account the need to maintain flexibility in the implementation of the underlying statutory and regulatory conditions for Medicaid/Medicare participation, conditions that remain unchanged since 1974.

With respect to the allegations that the PaCS rule is so inherently standardless that any enforcement would violate the due process clause of the United States Constitution, the court is convinced that the plaintiff has raised sufficiently serious questions going to the merits to make them a fair ground for litigation. However, a review of the record as a whole indicates that success is by no means probable or assured. As noted by the Secretary, while

the PaCS rule does allow the state surveyor substantial discretion, this discretion is narrowly limited to the conduct of the actual survey. The statutory and regulatory conditions for Medicaid/Medicare participation remain unchanged since 1974. Thus, the plaintiff cannot contend that it did not have notice of the standard of care to which it would be held. Instead, the plaintiff's complaint focuses on the assessment procedures. The court is obliged therefore to consider the entire procedure for assessing compliance. Where a home is given additional surveys to demonstrate compliance, followed by an informal review of the conclusions, then by a post-termination administrative review, it may be that the procedure as a whole provides adequate due process safeguards.

With respect to the allegations that the conduct of the surveyors in the inspection of Alvarado violated the Due Process Clause of the United States Constitution, the court is convinced that the plaintiff has barely raised sufficiently serious questions going to the merits to make them a fair ground for litigation. In the present case, the plaintiff has been afforded three separate opportunities, over a four month period, to demonstrate that it is in compliance with the statutory and regulatory conditions for Medicaid/Medicare participation. While it is possible that the conclusions of the defendants are in error, first, the plaintiff has failed to demonstrate any real likelihood that such is the case, and second, the plaintiff has adequate recourse to pursue such a claim by presenting and pursuing its contention before an Administrative Law Judge.

5. The plaintiff alleges that if its Medicare/Medi-Cal payments are terminated, three forms of harm will occur. First, it will be forced to relocate the Medicare/Medi-Cal patients to a new facility. The resulting "transfer trauma" may cause irreparable harm to a number of them. Second, it will suffer irreparable harm to its business reputation and good will. Third, it will suffer financial harm from the loss of payments.

The defendants allege that "transfer trauma" is speculative at best and that the real risk is to leave a patient in a substandard facility. The defendants further allege that the plaintiff has been aware since it began accepting Medicare/Medi-Cal payments that it must remain in compliance with all the requisite standards or face decertification. In the present context, therefore, it may be appropriate to give less weight to concerns for business reputation and good will.

The pending case is somewhat unusual in posture given that the most important element of harm to be weighed is the harm that may be caused to third parties, the patients. While the court is concerned that some patients may be at risk of "transfer trauma," the court is also concerned by the fact that the Secretary has made a determination that the patients may be in jeopardy if they remain at the facility. After carefully weighing all of the information presented, the court is convinced that the balance of hardships tips slightly in favor of the defendants.

With respect to two of the three claims alleged by plaintiff, the plaintiff has demonstrated that there are sufficiently serious questions going to the merits to make them a fair ground for litigation. With respect to the third claim, the plaintiff has barely satisfied the court that there are sufficiently serious questions going to the merits to make them a fair ground for litigation. With respect to the balancing of hardships, the court is convinced that the balance of hardships tips slightly in favor of the defendants.

The motion for a preliminary injunction is denied.

IT IS SO ORDERED.