In re the **ESTATE OF Michael Patrick SMITH, et al., Plaintiff(s),**

**and**

**People of the State of Colorado, et al., Plaintiffs-in-Intervention,**

v.

**Otis R. BOWEN, etc., Defendant(s).**

**Civ. A. No. 75–M–539.**

United States District Court, D. Colorado.

Dec. 18, 1987.

Kathleen Mullen, John R. Holland, Denver, Colo., for plaintiffs.

Maurice Knaizer, Colorado Atty. Gen.'s Office, Denver, Colo., for plaintiffs in intervention.

Shalom Brilliant, U.S. Dept. of Justice, Civil Div., Vicki Shulkin, Office of General Counsel, Dept. of HHS, Washington, D.C., James R. Cage, Asst. U.S. Atty., Denver, Colo., for the defendants.

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

On March 24, 1987, a judgment was entered requiring that the defendant, Secretary of Health and Human Services ("Secretary"), publish a Notice of Proposed Rule Making ("NPRM") consistent with the views expressed in the Memorandum Opinion and Order of the same date. The judgment required publication on or before June 1, 1987. On the defendant's motion, that time was extended through and including July 1, 1987. On Wednesday, July 1, 1987, a preamble to the proposed rules, proposed rules amending Subchapter B, Part 405 and Subchapter C, Part 442 of the Code of Federal Regulations, and Appendices A through E were published in the Federal Register. 52 Fed.Reg. 24752–24888 (1987) (proposed July 1, 1987). On September 8, 1987, the plaintiffs and plaintiffs-in-intervention ("plaintiffs") filed a motion for contempt or in the alternative for an order of mandamus, asserting that the Secretary failed to publish an NPRM that meets the requirements of this court's judgment. The question is whether the proposed rule concerning Medicaid is consistent with this court's order and the mandate from the Tenth Circuit Court of Appeals, based on the opinion in *Estate of Smith v. Heckler*, 747 F.2d 583 (10th Cir. 1984). Jurisdiction in this matter is in mandamus under 28 U.S.C. § 1361.

The Tenth Circuit described the Secretary's duty as follows:

> The Secretary has the duty to promulgate regulations which will enable her to be informed as to whether the nursing facilities receiving federal Medicaid funds are actually providing high quality medical care.

*Id.* at 591. In the Memorandum Opinion and Order of March 24, 1987, *Estate of Smith v. Bowen*, 656 F.Supp. 1093 (D.Colo. 1987), this court found an earlier NPRM inadequate because the Secretary had refused to be bound by specific procedures, guidelines and forms. That finding was based on the following premise:

> The essence of the ruling of the Court of Appeals is that the United States Congress has directed the Secretary to require the facilities to provide such care to Medicaid patients as the Secretary directs through the inspection of care program and the survey certification program. There is no legislative definition

of "quality health care," and there can be none. It is something which emanates from the process of regulation. The methodology prescribed is the vehicle by which the Secretary will become "informed as to whether the nursing facilities are actually providing high quality medical care." *Estate of Smith v. Heckler*, 747 F.2d at 591. Thus, the method is the medium both for defining the expected level of care and for determining performance.

*Id.* at 1096–97.

The newly proposed rule, applicable to Medicaid, 42 C.F.R. § 442.30, provides that federal funding is available only if a facility has been certified as meeting the requirements for Medicaid participation as evidenced by a provider agreement. An agreement is not valid evidence that a facility has met those requirements if the state survey agency fails to use the federal standards, forms, methods and procedures prescribed by HCFA in the state operations manual, or if the survey agency fails to adhere to the following principles in determining compliance:

(i) The survey process is the means to assess compliance with Federal health, safety and quality standards;

(ii) The survey process uses resident outcomes as the primary means to establish the compliance status of facilities. Specifically, surveyors will directly observe the actual provision of care and services to residents to assess whether the care provided meets the needs of individual residents;

(iii) Surveyors are professionals who use their judgment, in concert with Federal forms and procedures, to determine compliance;

(iv) Federal procedures are used by all surveyors to ensure uniform and consistent application and interpretation of Federal requirements;

(v) Federal forms are used by all surveyors to ensure proper recording of findings and to document the basis for the findings.

52 Fed.Reg. at 24760.

The federal forms, standards, methods and procedures required to be used by the state survey agency are not set forth in the rule. It is the Secretary's position that they should not be codified and that they are not subject to the notice and comment requirements of the Administrative Procedures Act. The proposed forms, standards, methods and procedures are contained in the appendices to the proposed rule. *Id.* at 24761–24888. Appendix A sets forth the reporting form for determining compliance with administrative and procedural requirements. Appendix B is a form to record and report findings made by the surveyors using the worksheets which are in Appendix C. Appendix D contains procedural guidelines setting forth the methodology for selecting a resident sample and the other aspects of the surveyor's task. The forms, procedures and methodology in Appendices B, C and D are referred to as Part B of the survey.

The purpose of Part B of the survey is to provide a valid and reliable assessment of whether a nursing home is actually delivering high quality care to its residents. Through the in-depth review of a representative sample of residents, surveyors identify resident needs and problems and determine how well care is provided to meet those needs. In addition, by our requiring surveyors to follow specific procedures and to perform resident reviews using a specified checklist, the Part B review promotes consistency in methodology and findings.

*Id.* at 24754.

Appendix E contains the care guidelines which the preamble describes as a "resource document" to be used by the surveyors to enable him or her to make "informed professional judgments on facility compliance." *Id.* at 24819. The guidelines present detailed questions to be asked in interviewing residents and staff and they include questions to be answered by observation as well as "evaluation factors." These evaluation factors are detailed standards of care.

In the brief in opposition to the plaintiff's motion, and at oral argument, counsel for

the Secretary contended that the subject NPRM is consistent with this court's order. The defendant asserts that the proposed forms and guidelines had to be published for meaningful comment, not for inclusion in the text of the final rule. The elements within the rule are said to be sufficient definition of the methodology. Additionally, the Secretary argues that it is undesirable to require the specific procedures, guidelines and forms to be set forth in the rule because that would make modification in response to a need for changes and improvements slow and difficult. It is the Secretary's position that such changes can be made without following the notice and comment procedures dictated by the APA because the forms and details of the procedure and methodology are interpretive and procedural, and therefore fall within the exemptions to publication found at 5 U.S.C. § 553(b)(A).

The Secretary has misinterpreted the Memorandum Opinion and Order of March 27, 1987. It must be remembered that the mandate of the Court of Appeals directed this court to compel the Secretary to promulgate regulations to effectuate the congressional purpose. The law of this case is clear. Under the Act, the states are responsible for establishing health standards and for determining whether institutions meet and continue to satisfy the requirements for participation in the Medicaid program. However, Congress has directed that when the Secretary questions such determinations by the states, the Secretary can make independent and binding determinations as to which institutions may participate in the Medicaid program. To exercise the discretion granted by Congress, the Secretary must remain informed, on a continuing basis, whether facilities receiving federal money are meeting the requirements of the Act. To become and remain informed, the Secretary must establish uniform standards for facility performance and a uniform methodology for evaluating that performance to ensure the delivery of high quality health care. Thus, the regulations required for these purposes must be prescriptive and legislative.

The Secretary makes much of the opinion of the Court of Appeals for the District of Columbia Circuit in *American Hospital Association v. Bowen*, 834 F.2d 1037 (D.C. Cir.1987), overruling the opinion of the district court, recognizing that the lower court analysis was considered comparable in this court's memorandum opinion. There is the suggestion that this court might have reached a different result if the views of the circuit had been known in March. That is not the case. First, this court was performing a duty imposed by the mandate of the Tenth Circuit Court of Appeals which was clear and direct. The caution given by the Court of Appeals that this court should not function as the Secretary was a reference to avoiding interference with the content of the standards to be set and the procedures and methodology to be adopted. Plaintiffs and intervenors had urged such involvement. Nothing in the March memorandum opinion could be considered such an interference.

Second, the *American Hospital* opinion is in a different factual context. There, the court was concerned with the peer review organization requirement of the statute and, essentially, considered the matters of the peer review contracts and procedures as being procedural and interpretive agency action within the exemption at 5 U.S.C. § 553(b)(A). What is significantly different here is that the forms, procedures and methodology serve the dual functions of evaluating health care and establishing substantive requirements for the state and the provider facilities. The manner in which the Secretary regulates the states controls the manner in which the states regulate the facilities and that, in turn, controls the treatment of the residents. The consequence of a facility's failure to pass the certification survey is the loss of the provider agreement and that can certainly be considered a property right subject to due process protection. Accordingly, as previously noted by this court, the standards of performance and the methods of evaluating that performance must be clear and certain to make enforcement action possible. The professional review organization system, on the other hand, is a

cost containment mechanism seeking to avoid unnecessary expenditures. The survey certification function is more like the Belmon Review Program discussed in *W.C. v. Bowen*, 807 F.2d 1502 (9th Cir.1987) and the Parole Commission guidelines discussed in *Pickus v. United States Board of Parole*, 507 F.2d 1107 (D.C. Cir.1974).

The Secretary contends that the principles for determining compliance set forth in proposed section 442.30(a)(5) adequately describe and will mandate the use of the fundamental features of the methodology that will make it "patient oriented." The Secretary also asserts that "quality health care" cannot be legislatively defined, and that the surveyors exercising their professional judgment will give meaning to that phrase. This court disagrees with both these contentions. The principles in the rule state that the survey process is the means and federal forms will be used. What is the process and what are the forms? They can be changed at any time for any reason and the Secretary is not bound because the rule does not articulate any methodology. Additionally, the required "elements" of a survey set forth in section 442.30(a)(7) do not give any direction or specify any content for the steps stated. Moreover, the Secretary's benign approach in relying on professional judgment rings hollow when there is no federal requirement of professionals on the survey team.

It is noteworthy that the Secretary has also published an NPRM which includes significant and substantive changes in the conditions of participation. 52 Fed.Reg. 38582–606 (1987) (proposed October 16, 1987). As applicable to the Medicaid Act, the proposals could be considered substantive standards of care but they, of course, are not now in effect. The difference between the content of the proposals and the present conditions of participation demonstrates the validity of the plaintiffs' contention and this court's earlier conclusion that the only substantive standards of care which have been submitted in response to the judgment of March 24, 1987, are those within Appendix E to the NPRM under consideration on this record.

It is this court's finding and conclusion that the Secretary has failed to comply with the requirements of the memorandum opinion and order as directed in the judgment. That failure constitutes a contempt of court. The contempt is technical because it is not the result of a contumacious attitude or a willful disregard of this court's authority and order. Accordingly, the remedy must emphasize the need to take further action in compliance rather than punishment for previous non-compliance.

To purge himself of contempt, the Secretary must take new action to promulgate a rule establishing standards of care and the methodology, forms and directions for the states survey certification process. This court is aware of the NPRM of October 16, 1987, concerning the conditions of participation and the possibility that the Secretary may choose to combine what is required under this court's judgment of March 27, 1987, with the matters contained in that proposed rule. The comment period under the NPRM of October 16, 1987, ends on January 14, 1988. Before setting a time limit for the required further action by the Secretary, it seems appropriate to direct the Secretary to advise the court of his view of a reasonable time to make such compliance. Accordingly, it is

ORDERED that on or before January 25, 1988, the Secretary will file with this court a statement of his position with respect to a reasonable time to comply with this order directing him to purge himself of contempt and setting forth the rationale for the suggestion made.