In the Matter of an ASSESSMENT IS-SUED TO LEISURE HILLS HEALTH CARE CENTER ON MARCH 2, 1992 and in the matter of Assessments Issued to Leisure Hills Health Care Center on April 6, 1992.

No. C5–93–2343.

Court of Appeals of Minnesota.

June 21, 1994.

Review Denied Sept. 16, 1994.

Thomas J. Barrett, Louis N. Smith, Meredith M. McQuaid, Minneapolis, for Leisure Hills Health Care Center.

Hubert H. Humphrey, III, Atty. Gen., Mary L. Stanislav, Maria C. Christu, Asst. Attys. Gen., St. Paul, for Dept. of Health.

Considered and decided by HARTEN, P.J., and KALITOWSKI and PETERSON, JJ.

## OPINION

KALITOWSKI, Judge.

Relator Leisure Hills Health Care Center (Leisure Hills) seeks review of three nursing home penalty assessments issued by respondent Minnesota Department of Health. Leisure Hills contends: (1) the Department must promulgate its nursing home inspection procedures as rules pursuant to the Minnesota Administrative Procedure Act (Minnesota APA); (2) the Department's inspection of Leisure Hills was arbitrary and capricious; and (3) the Commissioner of Health's decision is unsupported by substantial evidence in the record and disputed material facts preclude summary disposition.

## FACTS

Leisure Hills is a nursing home licensed by the State of Minnesota pursuant to Minn. Stat. Ch. 144A (1990). The Department is responsible for enforcing the standards that govern licensed nursing homes in Minnesota.

The Department must conduct inspections of each nursing home "with a frequency and in a manner calculated to produce the greatest benefit to residents within the limits of the resources available to the commissioner." Minn.Stat. § 144A.10, subd. 2 (1990). If the Department determines that a nursing home is not in compliance with state licensing requirements, the Department issues a correction order to the facility. Minn.Stat. § 144A.10, subd. 4. The correction order specifies the time allowed for correction, and the Department reinspects the nursing home at the end of that period. Minn.Stat. § 144A.10, subd. 4, 5. If the violation has not been corrected, the Department issues a notice of noncompliance and assesses a civil fine. Minn.Stat. § 144A.10, subds. 5, 6. A nursing home may challenge a penalty assessment through a contested case hearing

pursuant to the Minnesota APA. Minn.Stat. § 144A.10, subd. 8.

The Department is also responsible for certifying that Minnesota nursing homes comply with federal long-term care standards. *See* 42 U.S.C. § 1395aa(a) (Supp. II 1990); 42 U.S.C. § 1396a(a)(33)(B) (1988). Annual federal surveys must be conducted in accordance with the applicable federal regulations. *See* 42 C.F.R. § 488 (1991). The federal regulations delineate general requirements that states must follow in determining compliance with the federal standards. 42 C.F.R. § 488.26. In addition to these general requirements, the federal government has issued specific survey procedures that states should follow to determine whether a facility complies with federal requirements. *See State Operations Manual,* "Appendix P: Survey Procedures and Interpretive Guidelines for Skilled Nursing Facilities and Intermediate Care Facilities" (Appendix P). The federal regulations do not require states to follow the federal procedures when identifying state licensure violations.

The Department performs its state and federal functions through annual federal surveys and biennial combined federal and state surveys. Although the Department has not formally adopted the federal regulations to determine state violations, the Department informally uses the federal regulations because the biennial state survey coincides with the annual federal survey.

In addition to conducting surveys, the Department investigates specific complaints against nursing homes. The director of the Department has broad statutory authority in this respect. *See* Minn.Stat. § 144A.53 (1990). The Department's staff receives extensive training designed to acquaint them with applicable state and federal rules.

On November 4–7, 1991, the Department conducted a combined federal and state licensing survey at Leisure Hills and identified multiple violations. On November 19, 1991, the Department issued correction orders for six violations of state rules, three of which are at issue on appeal: (1) Minn.R. 4655.-5100, subpt. 1 (1991) (adequate staffing); (2) Minn.R. 4655.6800A (1991) (checking incontinent residents); and (3) Minn.R. 4655.6800B (1991) (skin care and repositioning of residents). No federal deficiencies are at issue on appeal. In early 1992, the Department determined that Leisure Hills failed to timely correct the three violations at issue on appeal and assessed civil fines. The Department subsequently determined that Leisure Hills had corrected all violations.

Leisure Hills sought a contested case hearing on the penalty assessments, challenging the Department's inspections of Leisure Hills. On cross-motions for summary disposition, the Administrative Law Judge (ALJ) recommended that the Commissioner deny summary disposition in favor of Leisure Hills and grant summary disposition in favor of the Department. The ALJ held, in part, that: (1) the Department need not promulgate its inspection procedures pursuant to the rulemaking requirements of the Minnesota APA; and (2) the Department's inspection of Leisure Hills was neither arbitrary nor capricious. The Commissioner adopted the ALJ's recommendation and ordered Leisure Hills to pay the assessments. This appeal followed.

## ISSUES

1. Did the Commissioner err in concluding that the Department is not required to promulgate its nursing home inspection procedures as rules pursuant to the Minnesota APA?

2. Did the Commissioner err in concluding that the Department's procedures were not arbitrary and capricious?

3. Is the Commissioner's decision supported by substantial evidence in the record and are there no disputed material facts that preclude summary disposition?

## ANALYSIS

### I.

Leisure Hills contends the Commissioner erred in concluding that the Department is not required to promulgate its inspection procedures pursuant to the rulemaking requirements of the Minnesota APA. We are not required to defer to an administrative agency with respect to pure questions

of law. *St. Otto's Home v. Minnesota Dep't of Human Servs.*, 437 N.W.2d 35, 39–40 (Minn.1989). We must declare an agency's action invalid, however, if the agency adopts policy without complying with statutory rulemaking requirements. *Cable Communications Bd. v. Nor–West Cable Communications Partnership*, 356 N.W.2d 658, 667–68 (Minn.1984).

The Minnesota APA requires agencies to promulgate, as rules, all formal and informal procedures of an agency "to the extent that those procedures directly affect the rights of or procedures available to the public." Minn. Stat. § 14.06 (1990). Under the Minnesota APA, "rule" means

> every agency statement of general applicability and future effect, including amendments, suspensions, and repeals of rules, adopted to implement or make specific the law enforced or administered by that agency or to govern its organization or procedure.

Minn.Stat. § 14.02, subd. 4 (1990). This definition of "rule" does not include:

> rules concerning only the internal management of the agency or other agencies that do not directly affect the rights of or procedures available to the public.

Minn.Stat. § 14.03, subd. 3(1) (1990).

■ We conclude the Department is not required to promulgate its inspection procedures pursuant to the rulemaking requirements of the Minnesota APA because the Department's inspection procedures involve only the internal management of the agency, and neither directly affect the rights of the public nor the procedures available to the public.

First, the Department's procedures do not directly affect the rights of the public. The Department has promulgated its substantive standards in accordance with the Minnesota APA. *See* Minn.R.Ch. 4655 (1991) (delineating nursing home care standards). Because failure to comply with these substantive standards may result in assessments and other penalties, these substantive rules directly affect Leisure Hills' rights. The inspection procedures by which the Department enforces the substantive standards, however, do not

directly affect Leisure Hills' rights. Although Leisure Hills may have an interest in the inspection procedures used by the Department, Leisure Hills has no right to require certain inspection procedures. Because the Department's inspection procedures do not directly affect the rights of the public, the cases relied on by Leisure Hills are inapplicable. *See, e.g., McKee v. Likins,* 261 N.W.2d 566, 577–78 (Minn.1977) (requiring a policy bulletin allowing reimbursement for certain abortions to be promulgated as rules because it involved a question of social and political policy important to the public); *Hanna Mining Co. v. Minnesota Pub. Utils. Comm'n,* 375 N.W.2d 550, 553 (Minn.App. 1985) (requiring the MPUC to adopt rules where the substantial rights of mining companies would otherwise be prejudiced), *pet. for rev. denied* (Minn. Dec. 30, 1985).

Second, the Department's inspection procedures do not directly affect the procedures available to the public. Rather, the Department's inspection procedures involve only the internal management of the agency, which are committed to the Department's broad discretion. *See* Minn.Stat. §§ 144A.10 and 144A.53 (granting the Department and its director broad discretion to determine the manner in which evidence is gathered and the manner in which violations are determined); *see also Dow Chemical Co. v. United States,* 476 U.S. 227, 233, 106 S.Ct. 1819, 1824, 90 L.Ed.2d 226 (1986) ("When Congress invests an agency with enforcement and investigatory authority, it is not necessary to identify explicitly each and every technique that may be used in the course of executing the statutory mission"); *State by Waste Management Bd. v. Bruesehoff,* 343 N.W.2d 292, 295 (Minn.App.1984) ("obtaining information" and "conducting surveys and investigation," as permitted by statute, are expansive phrases). Accordingly, the Department is not required to use the identical procedures to inspect all nursing homes.

■ We are not persuaded by Leisure Hills' contention that because the federal government has adopted nursing home inspection procedures by formal rule, Minnesota should be required to do likewise. First, the Department is not required to follow the

federal regulations involving inspection procedures to determine state violations. Second, many of the procedures that Leisure Hills contends the Department must promulgate as rules under the Minnesota APA have not been promulgated as rules under the federal APA. *See* Appendix P. Third, the federal APA recognizes an "internal management exception" in that the rulemaking requirement does not apply to "rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(A) (1988). In construing this language, federal courts have focused on whether an agency's procedures have a substantial impact on the public. *See, e.g., United States Dep't of Labor v. Kast Metals Corp,* 744 F.2d 1145, 1154–55 (5th Cir.1984) (holding an OSHA inspection plan that did not have a substantial impact on the industry did not require APA rulemaking).

Finally, it should be noted that several federal courts have specifically addressed whether rulemaking is required for inspections and reviews of long-term care facilities. *Compare American Hosp. Ass'n v. Bowen,* 834 F.2d 1037, 1051 (D.C.Cir.1987) (manuals containing procedures for a peer review program imposed "no new burdens on hospitals" and thus did not require rulemaking) with *Estate of Smith v. Bowen,* 675 F.Supp. 586, 589 (D.Colo.1987) (distinguishing *American Hosp.* because the agency's procedures in *Estate of Smith* established substantive requirements in addition to evaluating health care). Because the Department's inspection procedures do not contain substantive standards, they do not directly affect the rights of or procedures available to the public. We conclude that the Department need not promulgate its inspection procedures pursuant to the rulemaking requirements of Minnesota APA.

## II.

■ Leisure Hills contends the Commissioner erred in concluding that the Department's procedures did not constitute arbitrary and capricious action. We may reverse or remand an agency decision if the substantial rights of the petitioners may have been prejudiced because the administrative decision was arbitrary or capricious. Minn.Stat. § 14.69(f) (1992). An agency decision is arbitrary or capricious if it "is based on whim or is devoid of articulated reasons." *Mammenga v. Department of Human Servs.,* 442 N.W.2d 786, 789 (Minn.1989).

■ Leisure Hills contends that the Department's failure to follow the federal regulations, in the absence of an established state inspection process, constitutes arbitrary and capricious action. We disagree because: (1) the Department is not required to follow the federal regulations in assessing state violations; (2) Leisure Hills failed to establish that the Department's inspection of Leisure Hills was based on whim or devoid of articulated reasons; and (3) Leisure Hills made no showing that the Department abused its broad discretion in gathering information or enforcing its rules. Because Leisure Hills provides no basis for finding the Department's actions were arbitrary and capricious, we affirm the Commissioner's decision.

## III.

■ Leisure Hills contends the Commissioner's decision is not supported by substantial evidence in the record and that there are disputed material facts that preclude summary disposition. We may reverse or remand an agency decision if the substantial rights of the petitioners may have been prejudiced because the administrative decision was not supported by substantial evidence contained in the record. Minn.Stat. § 14.-69(e) (1992). "Substantial evidence" means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. *Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 825 (Minn.1977).

■ On appeal from a summary disposition, this court must determine: (1) whether there are any genuine issues of material fact; and (2) whether the trial court erred in its application of the law. *City of Va. v. Northland Office Properties Ltd. Partnership,* 465 N.W.2d 424, 427 (Minn.App.1991), *pet. for rev. denied* (Minn. Apr. 18, 1991). The party opposing the motion may not rely upon mere general statements of fact, but "must demonstrate at the time the motion is made that specific facts are in existence which create a genuine issue for trial." *Hunt v. IBM Mid*

*Am. Employees Fed. Credit Union,* 384 N.W.2d 853, 855 (Minn.1986); *see also* Minn. R.Civ.P. 56.05.

 Leisure Hills contends the penalty assessments for inadequate staffing were based on inadequate and disputed facts because the Department failed to prove that: (1) the cited problems resulted from inadequate staffing; (2) the violations occurred after the period allowed for correction; and (3) the violations affected patient outcomes. We disagree.

First, sufficient evidence supports the Department's determination that staffing was inadequate, including call light response times, the existence of other licensing violations, interviews with residents and their families, interviews of facility staff, review of the facility's records, and declined ambulation of two residents. Second, Leisure Hills failed to rebut the Department's evidence with any evidence indicating that the staffing was not inadequate, or with evidence demonstrating that the Department's findings were based solely on staffing problems that occurred during the correction period. Third, Leisure Hills' argument that the assessments failed to focus on patient outcome is not relevant because a focus on patient outcome is not required when determining state violations.

 Leisure Hills also challenges the penalty assessment for failure to check for incontinency, alleging that its staff employs a technique for checking incontinence that could not be easily observed by the Department's surveyors. None of Leisure Hills' employees, however, contradicted the surveyors' findings that residents were not properly checked on the dates in question. General denials are insufficient to preclude summary disposition, especially in light of the specificity of the Department's evidence. *See Hunt,* 384 N.W.2d at 855.

Finally, Leisure Hills challenges the penalty assessment for failure to reposition patients, contending insufficient evidence exists because of inadequate notation by the surveyors and inadequate evidence of a pattern of violations. We disagree. The Department is required to provide specific notation and document a pattern of violations under federal standards, but not under state standards. The Department may issue assessments for violations of the plain language of state licensing rules, even if the assessments are based on a single incident.

### DECISION

The Commissioner correctly held that the Department is not required to promulgate its inspection procedures as rules pursuant to the Minnesota APA and that the Department's action was not arbitrary and capricious. The Commissioner's decision is based on substantial evidence and does not determine disputed issues of material fact.

**Affirmed.**