**Russell Howard WEBER, et al., for themselves, and on behalf of all similarly situated persons, Appellants,**

v.

**Sheryl Ramstad HVASS, individually and in her official capacity as Commissioner of the Minnesota Department of Corrections, et al., Respondent.**

No. C6–00–1707.

Court of Appeals of Minnesota.

April 24, 2001.

Review Denied June 27, 2001.

Robert J. Hennessey, Sandra S. Smalley, Lindquist & Vennum, P.L.L.P., Minneapolis, MN, for appellants.

Teresa Nelson, Minnesota Civil Liberties Union, St. Paul, MN, of counsel for appellants.

Michael A. Hatch, Minnesota Attorney General, Kurt J. Erickson, Assistant Attorney General, Jennifer K. Park, Assistant Attorney General, St. Paul, MN, for respondent.

Considered and decided by STONEBURNER, Presiding Judge, KALITOWSKI and HALBROOKS, Judges.

## OPINION

STONEBURNER, Judge

Appellants, a putative class of adult inmates in correctional facilities administered by the Minnesota Department of Corrections (DOC) and a putative class of non-inmates who send money gifts to inmates, filed this class-action lawsuit against respondent Sheryl Ramstad Hvass, Commissioner of Corrections for the State of Minnesota, individually and in her capacity as commissioner of the DOC, and Dennis L. Benson, individually and in his capacity as Deputy Commissioner of Corrections, challenging the imposition of a 10% cost-of-confinement surcharge on money sent as gifts to adult inmates incarcerated in DOC correctional facilities. The district court granted summary judgment in favor of respondents on all claims. We affirm.

## FACTS

The material facts are undisputed. On July 5, 1999, Commissioner Ramstad Hvass issued a memorandum that, effective September 1, 1999, DOC would collect costs of confinement from funds sent to adult inmates incarcerated in DOC correctional facilities. The policy was posted at all DOC facilities. Before the policy was implemented, on August 31, 1999, DOC revised the policy by exempting some funds from the surcharge.[1] Pursuant to the policy, before non-exempt, non-wage funds are deposited to an inmate's account, DOC deducts 10% for partial reimbursement of confinement costs.

In January 2000, appellants, adult inmates in DOC correctional facilities and non-inmates who send gifts of money to inmates, filed this class-action lawsuit challenging the cost-of-confinement policy. The classes were never certified. The named inmate appellants are: Russell Howard Weber, surcharged approximately $12.50; Harold John Wilwert, Jr., surcharged approximately $157.50; and Gustavo Dion Saucedo, surcharged approximately $79. The named non-inmate appellants are Betty Rairdon, whose inmate-husband was surcharged approximately ten cents; Rebecka Hall, whose inmate-husband was surcharged approximately $12.80; and Jacky Baily, whose inmate-son was surcharged approximately $24.

On July 31, 2000, the district court, in a thorough and well-reasoned opinion, granted summary judgment for respondents on all claims. This appeal follows.

## ISSUES

**I.** Do the non-inmate appellants have standing to challenge the cost-of-confinement policy?

**II.** In enacting the cost-of-confinement policy, did DOC act beyond its statutory authority under Minn.Stat. § 243.23 (2000)?

**III.** In enacting the cost-of-confinement policy, did DOC violate the rulemaking requirements of the Minnesota Administrative Procedures Act?

**IV.** Does the cost-of-confinement policy violate appellants' procedural due-process rights?

**V.** Does the cost-of-confinement policy constitute an unconstitutional governmental taking?

**VI.** Does the cost-of-confinement policy impose a differential tax on the non-inmate appellants in violation of Minn. Const. Art. X, § 1?

## ANALYSIS

On appeal from summary judgment, this court considers (1) whether there are any genuine issues of material fact, and (2) whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990) (citation omitted). When the district court grants summary judgment

---

1. The policy exempts money coming from Veterans' Administration and Social Security benefits received directly from the federal agency; proceeds from civil rights claims filed pursuant to 42 U.S.C. § 1983; certain funds distributed to Native Americans; intra departmental transfers of offender money including interstate returns; vendor refunds from offender purchases when the offender has proof the purchase was made with funds from their facility account; funds received for interstate travel expenses; scholarship funds from Metro State University for higher education; and property claim settlements from joint house/senate committee claims process. If the DOC receives money for an inmate that may qualify for an exemption, the DOC sends the inmate a notification of the possible exemption, and forwards to the sender of the check a "Request for Information Regarding Offender Receipt of Funds."

based on the application of a statute to undisputed facts, the result is a legal conclusion reviewed de novo by the appellate court. *Lefto v. Hoggsbreath Enters., Inc.*, 581 N.W.2d 855, 856 (Minn.1998) (citing *Wallin v. Letourneau*, 534 N.W.2d 712, 715 (Minn.1995)).

## I.

The non-inmate appellants argue that the district court erred in finding that they have no standing. They contend that because the inmates did not have possession and control of the money at the time the surcharge was imposed, title to those funds never vested with the inmate and only the non-inmate appellants have suffered the actual injury.

"A litigant has standing when he or she has suffered an actual injury or otherwise has a sufficient stake in a justiciable controversy to seek relief from a court." *Leffler v. Leffler*, 602 N.W.2d 420, 422 (Minn.App.1999) (citing *Cochrane v. Tudor Oaks Condo. Project*, 529 N.W.2d 429, 433 (Minn.App.1995), *review denied* (Minn. May 31, 1995)). "Economic injury or the prospect of economic injury may be sufficient to establish standing." *In re Application of Crown CoCo, Inc.*, 458 N.W.2d 132, 135 (Minn.App.1990). The district court concluded that once a non-inmate appellant sends money to DOC for an inmate, the gift is delivered and the donor has relinquished all control over the money. We agree.

The elements of a gift are (1) delivery; (2) intention to make a gift; and (3) absolute disposition by the donor of the thing which the donor intends as a gift. *In re Estate of Lobe*, 348 N.W.2d 413, 414 (Minn.App.1984). A gift requires that the donor "deliver the property to the donee, *or to someone for him*, with intent to vest title in the donee, and without reserving any right to reclaim the property." *Oehler*

*v. Falstrom*, 273 Minn. 453, 142 N.W.2d 581, 585 (1966) (emphasis added). The only method by which the non-inmate appellants can make a monetary gift to an inmate is by sending money to DOC for deposit in an inmate's account. *See Bell v. Wolfish*, 441 U.S. 520, 545–46, 99 S.Ct. 1861, 1877–78, 60 L.Ed.2d 447 (1979) (finding inmates' rights and privileges limited by considerations of penal system); *Mahers v. Halford*, 76 F.3d 951, 954 (8th Cir. 1996) (recognizing inmates not entitled to complete control over their money).

DOC controls the receipt of money and property from outside sources for the inmates in order to safely and efficiently manage its facilities. DOC constructively receives funds on behalf of an inmate and then imposes a surcharge on the funds before depositing the gift into the inmate's account. The district court correctly concluded that the non-inmate appellants make an absolute disposition of their gifts once they send the money to DOC. The non-inmate appellants have not suffered an actual injury and do not have standing to challenge DOC's cost-of-confinement policy.

## II.

Appellants argue that DOC exceeded its statutory authority under Minn.Stat. § 243.23 (2000) by creating a debt for costs of confinement and surcharging all incoming non-wage funds.

If an administrative agency's authority is questioned, this court independently reviews the enabling statute. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984). "[A] determination of an administrative agency is void and subject to collateral attack where it is made either without statutory power or in excess there-

of." *Crown CoCo,* 458 N.W.2d at 136 (quotation omitted).

■ The purpose of statutory interpretation is to effectuate legislative intent. Minn.Stat. § 645.16 (2000). "Every law shall be construed, if possible, to give effect to all its provisions." *Id.* A statute should be construed so no phrase is "superfluous, void, or insignificant." *Boutin v. LaFleur,* 591 N.W.2d 711, 716 (Minn. 1999) (citation omitted).

■ This court will examine legislative history as a tool for construing statutory language only when the language is ambiguous. *State v. Sebasky,* 547 N.W.2d 93, 99 (Minn.App.1996), *review denied* (Minn. June 19, 1996). When the words of a statute are unambiguous, "the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16 (2000).

Minn.Stat. § 243.23, subd. 1 [2] provides that the commissioner may pay inmates for work performed and control that compensation:

> Notwithstanding any law to the contrary, the commissioner of corrections may provide for the payment to inmates of correctional facilities under the commissioner's management and control any pecuniary compensation the commissioner deems proper, the amount of compensation to depend upon the quality and character of the work performed as determined by the commissioner of corrections and the chief executive officer.

Subdivision 2 gives the commissioner specific authority to require inmates to pay part of the costs of confinement out of their earnings:

> The commissioner may promulgate rules requiring the inmates of adult correctional facilities under the commissioner's control to pay all or a part of the cost of their board, room, clothing, medical, dental and other correctional services. These costs are payable from any earnings of the inmate, including earnings from private industry established at state correctional facilities pursuant to section 243.88.

*Id.,* subd. 2. Subdivision 3 provides:

> Notwithstanding sections 241.26, subdivision 5, and 243.24, subdivision 1, the commissioner may make deductions from funds earned under subdivision 1, *or other funds in an inmate account,* and section 243.88, subdivision 2. The commissioner shall make deductions for the following expenses in the following order of priority:
>
> (1) federal and state taxes;
>
> (2) repayment of advances;
>
> (3) gate money as provided in section 243.24;
>
> (4) support of families and dependent relatives of the respective inmates;
>
> (5) payment of court-ordered restitution;
>
> *(6) room and board or other costs of confinement;*
>
> (7) medical expenses incurred under section 243.212;
>
> (8) payment of fees and costs in a civil action commenced by an inmate;

---

**2.** The statute is titled "Compensation Paid to Inmates," but appellants' reliance on the title is impermissible under the rules of statutory construction. Minn.Stat. § 645.49 (2000); *Associated Builders & Contractors v. Ventura,* 610 N.W.2d 293, 303 n. 23 (Minn.2000); *Minter–Weisman Co. v. Commissioner of Revenue,* 520 N.W.2d 1, 3 (Minn.App.1994) (holding that statute's heading is not part of the statute for purposes of construing it), *review denied,* (Minn. Sept. 28, 1994).

(9) payment of fines, surcharges, or other fees assessed or ordered by a court;

(10) contribution to the crime victims reparations board created under section 611A.55, provided that the contribution shall not be more than 20 percent of an inmate's gross wages;

(11) the payment of restitution to the commissioner ordered by prison disciplinary hearing officers for damage to property caused by an inmate's conduct;

(12) restitution to staff ordered by a prison disciplinary hearing officer for damage to property caused by an inmate's conduct;

(13) restitution to another inmate ordered by a prison disciplinary hearing officer for personal injury to another caused by an inmate's conduct; and

(14) discharge of any legal obligations arising out of litigation under this subdivision.

The commissioner may authorize the payment of court-ordered restitution from an inmate's wages when the restitution was ordered by the court as a sanction for the conviction of an offense which is not the offense of commitment, including offenses which occurred prior to the offense for which the inmate was committed to the commissioner.

*Id.,* subd. 3(emphasis added).

■ Appellants argue first that the statute, read as a whole, unambiguously relates only to deductions from wages and does not authorize DOC to deduct costs of confinement from non-wage funds. In the alternative, appellants contend that, if the statute is ambiguous, the legislative history demonstrates that DOC may only deduct costs of confinement from wages. We disagree with both analyses.

Subdivision 3 is unambiguous. Although compensation paid to an inmate is specifically referenced, subdivision 3 also authorizes deduction from "other funds." If deductions could only be taken from wages, then the phrase "or other funds in an inmate account" would be superfluous. This phrase is an open-ended term with no limitation on the sources of the funds in an inmate account. *See* Minn.Stat. § 645.08(1) (2000) ("Words and phrases are construed according * * * to their common and approved usage."). The language of Minn.Stat. § 243.23, subd. 3 unambiguously authorizes DOC to deduct costs of confinement from non-wage funds.[3] The district court correctly concluded that DOC has statutory authority to create the debt for costs of confinement and to make deductions from non-wage funds to satisfy the debt.

### III.

Appellants argue that DOC failed to properly adopt the cost-of-confinement policy according to the rulemaking procedures in the Minnesota Administrative Procedures Act (MAPA).

■ This court must declare an agency's action invalid if the agency adopts policy without complying with statutory rulemaking requirements. *In re Assessment Issued to Leisure Hills Health Care Ctr.,* 518 N.W.2d 71, 74 (Minn.App.1994) (citing *Cable Communications Bd. v. Nor–West Cable Communications P'ship.,* 356 N.W.2d 658, 667–68 (Minn.1984)), *review denied* (Minn. Sept. 16, 1994). An agency

---

**3.** *See Murray v. MINNCOR,* 596 N.W.2d 702, 704 (Minn.App.1999), *review denied* (Minn. Sept. 28, 1999) (recognizing statute authorizes DOC to deduct court filing fees and medical costs from non-wage funds in inmate account).

must promulgate as rules all formal and informal procedures "to the extent that those procedures directly affect the rights of or procedures available to the public." Minn.Stat. § 14.06 (2000). A rule is "every agency statement of general applicability and future effect." Minn.Stat. § 14.02, subd. 4 (2000). DOC's cost-of-confinement policy is clearly a rule, because it has general applicability over all inmates confined in DOC's facilities and will have a future effect on their accounts.

The legislature included all agency activities within the general definition of "rule," and then excluded specific activities from the definition "as it deemed beneficial to the concerns of efficient government and public participation." *McKee v. Likins*, 261 N.W.2d 566, 577 (Minn.1977). After determining the policy is a "rule," we inquire whether the policy falls within an exception. *See id.*

A general exception exempts from the definition of a rule

[r]ules concerning only the internal management of the agency or other agencies that do not directly affect the rights of or procedures available to the public.

Minn.Stat. § 14.03, subd. 3(a)(1) (2000); *see Leisure Hills*, 518 N.W.2d at 74 (finding Department of Health not required to promulgate inspection procedures of nursing homes pursuant to APA because procedures involved only internal management and did not affect rights available to the public); *Stony Ridge & Carlos View Terrace Ass'n. v. Alexander*, 353 N.W.2d 700, 704 (Minn.App.1984) (finding DNR policy regarding the location of public water ac-

cess sites only controls internal management and is not a rule).

A specific exception exempts from the definition of a rule

[r]ules of the commissioner of corrections relating to the placement and supervision of inmates serving a supervised release term, the internal management of institutions under the commissioner's control, and rules adopted under section 609.105[4] governing the inmates of those institutions.

Minn.Stat. § 14.03, subd. 3(b)(1) (2000). The district court relied on the specific exemption, finding that the cost-of-confinement policy provides the mechanism to implement the surcharge authorized by Minn.Stat. § 243.23, subd. 3, helps defray the costs of housing inmates, and instills a sense of responsibility necessary for rehabilitation and preparation for eventual release. The district court found that the policy also falls within Minn.Stat. § 609.105. We agree that the cost-of-confinement policy falls within these exemptions to the definition of "rule" and that DOC was not required to engage in formal rulemaking procedure to promulgate the policy.

## IV.

▪ Appellants argue that because there is no individual pre- or post-deprivation hearing, the cost-of-confinement policy violates their procedural due-process rights under Minn. Const. art. I, § 7 and U.S. Const. amend. XIV, § 1. To support their due-process claim, appellants rely, at least in part, on their argument that no statutory authority exists for the debt or

---

4. Minn.Stat. § 609.105, subd. 2 (2000) provides that:

"[t]he commissioner of corrections shall determine the place of confinement in a prison, reformatory, or other facility of the department of corrections established by law

for the confinement of convicted persons and prescribe reasonable conditions and rules for their employment, conduct, instruction, and discipline within or without the facility."

for its collection from non-wage sources. We have rejected that argument and have specifically found statutory authority for the debt and its collection pursuant to the policy. DOC points out that "[w]hen the legislature passes a law which affects a general class of persons, those persons have all received procedural due process— the legislative process." *Oklahoma Educ. Ass'n. v. Alcoholic Beverage Laws Enforcement Comm'n*, 889 F.2d 929, 936 (10th Cir.1989) (quoting 2 R. Rotunda et. al., *Treatise on Constitutional Law: Substance & Procedure* § 17.8, at 251 (1986)).

The district court evaluated the procedural due-process challenge using the three-part balancing test enunciated in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *See In re Conservatorship of Foster*, 547 N.W.2d 81, 85 (Minn.1996). Under this test, a court considers whether the process adequately balances: (1) the private interest; (2) the risk that the process will result in an erroneous deprivation of the private interest and the probable value of additional or substitute procedural safeguards; and (3) the state's interest. *Id.*

Here the inmate-appellants have a limited private interest. An inmate's rights and privileges are limited by the considerations of the penal system. *Bell*, 441 U.S. at 545–46, 99 S.Ct. at 1877–78. Inmates are not entitled to complete control over their money while in prison. *Mahers*, 76 F.3d at 954–56 (finding due-process rights not violated by 20% deduction from all money received from outside sources to satisfy restitution). In addition, the 10% surcharge has not resulted in a significant economic impact on individual appellants. Appellants pay only a small portion of the costs of their confinement, and their basic needs are met without need for any additional incoming funds. *See id.* at 954–55 (noting inmates not absolutely deprived of the benefit of money).

The risk of an erroneous deprivation of the appellants' interest in the money is small. Statutory authority supports the policy, the appellants received notice of the policy prior to its implementation, and despite the fact that the statute does not require any exemptions, the policy provides for exemptions and for a process to claim exemptions.

The state has a considerable interest in the appellants' contribution to the significant costs of confinement, and DOC cannot reasonably be expected to hold a hearing for each individual surcharge. The Eighth Circuit noted, "We are in no position to determine the administrative costs of providing a hearing before deducting from each incremental deposit that a prisoner receives from an outside source." *Id.* at 956 (acknowledging courts cannot oversee details of prison administration).

The district court did not err in concluding that the cost-of-confinement policy does not violate appellants' due-process rights, because the government's interest substantially outweighs the private interest and the risk of an erroneous deprivation of that interest.

**V.**

Appellants argue that the costs-of-confinement surcharge is an improper governmental taking of their private property in violation of Minn. Const. art. I, § 13 and U.S. Const. amend. V.[5]

The U.S. Takings Clause states: "[N]or shall private property be taken for public use, without just compen-

---

**5.** Appellants' taking argument appears to be based only on the non-inmate appellants' rights and the assertions that authority does not exist for a cost-of-confinement debt, grounds we have found to be without merit.

sation." U.S. Const. amend. V.[6] "[A] constructive taking occurs when the state, in the exercise of its police power, * * * unfairly diminishes the value of the individual's property, thus causing the individual to bear the burden rightly borne by the public." *Westling v. County of Mille Lacs,* 581 N.W.2d 815, 823 (Minn.1998) (citation omitted). Generally, determining whether a taking has occurred is a fact-specific inquiry. *Id.* (citation omitted). A court must look both at the "character of the action" and at the "nature and extent of the interference with rights in the parcel as a whole." *Id.* (quoting *Penn Central Transp. Co. v. City of New York,* 438 U.S. 104, 130–31, 98 S.Ct. 2646, 2662, 57 L.Ed.2d 631 (1978)).

The district court analyzed the "takings" challenge using three factors from *Penn Central:* (1) the economic impact of the regulation on the people suffering the loss; (2) the extent to which the regulation interferes with distinct investment-backed expectations; and (3) the character of the government action to assess whether the complained-of action effected a taking of private property for public use. *See Zeman v. City of Minneapolis,* 552 N.W.2d 548, 552 (Minn.1996) (citing *Connolly v. Pension Benefit Guaranty Corp.,* 475 U.S. 211, 225, 106 S.Ct. 1018, 1026, 89 L.Ed.2d 166 (1986)). The first two factors involve the economic impact on the appellants, which, as discussed above, is minimal. Regarding the third factor, the appellants clearly do not bear a public burden alone, but rather, pay only a portion of their own costs of confinement. DOC has determined that inmates gain a sense of responsibility for their actions through this payment. The district court did not err in concluding that the cost-of-confinement policy does not constitute an unconstitutional governmental taking.

**VI.**

The non-inmate appellants argue that the DOC violated Minn. Const. art. X, § 1 in applying a differential tax on the same class of property. Because we found that the non-inmate appellants do not have standing, we need not reach this issue.

**DECISION**

Non-inmate appellants do not have standing to challenge DOC's 10% cost-of-confinement surcharge on non-exempt, non-wage inmate funds. DOC did not exceed its statutory authority or engage in improper rulemaking in promulgating the cost-of-confinement policy. DOC policy does not violate appellants' due-process rights and does not constitute an unconstitutional governmental taking of appellants' property. The district court properly granted summary judgment to respondents.

**Affirmed.**

---

**6.** Minn. Const. art. I, § 13 provides: "Private property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid and secured."